Sullivan, 
Dec. 1, 1903.

REYNOLDS *v.* HITCHCOCK, *Adm'r, & a.*

SAME *v.* SAME.

A bastard and his issue have no right of inheritance from his mother's collateral kindred.

PROBATE APPEAL and WRIT OF ENTRY. Facts agreed. Transferred from the May term, 1903, of the superior court by *Wallace,* C. J.

George H. Wallingford died in December, 1901, leaving no relatives in the ascending or descending lines, no brother or sister, and no descendant of a brother or sister other than the plaintiff, who is the illegitimate child of the decedent's sister. The first proceeding is an appeal from a decree of the probate court awarding the personal estate to one Hitchcock, and the second is an action to recover the real estate of the decedent. The decree of the probate court was affirmed, and judgment was ordered for the defendants in the action at law, subject to the plaintiff's exceptions as to both rulings.

*Henry N. Hurd,* for the plaintiff.

*Hosea W. Parker* and *Ira Colby & Son,* for the defendants.

REMICK, J. The single question in this case is whether a bastard and his issue can inherit from his mother's collateral kindred.

By the common law of England, a bastard was the child of nobody. As he was related to nobody, he could neither inherit nor, except to his own issue, transmit by inheritance. *Dickinson's Appeal,* 42 Conn. 491, 500 ; 1 Bl. Com. 459 ; 4 Kent 413 ; Schoul. Dom. Rel., *ss.* 276, 277 ; Rodg. Dom. Rel., *ss.* 579, 580. The common law of England in this respect became the common law of New Hamp-

shire (*Bow* v. *Nottingham*, 1 N. H. 260, 261) and quite generally of the United States. 24 Am. & Eng. Enc. Law (1st ed.) 413. But "there is scarcely a state in the Union which has not departed widely from the policy of the English common law." Schoul. Dom. Rel., *s.* 277 ; Rodg. Dom. Rel., *s.* 582; 24 Am. & Eng. Enc. Law (1st ed.) 414. New Hampshire has not remained insensible to the considerations of humanity and justice which have actuated other states. In 1822, it was enacted "that the heirs of a bastard in the ascending and collateral lines shall be its mother and her heirs." Laws 1822, *c.* 27, *s.* 3. Little can be said in behalf of this act as a measure of humanity and justice toward the bastard. In providing that his mother and her heirs should be his heirs, and leaving him still altogether incapable of inheriting, the legislature would seem to have been thinking more of his property than of him. "If a discrimination was to be made, and the right of descent granted to one party only, then surely the provision should have been directly the reverse." 4 Kent 417. If the law will not interpose "for the benefit of the child, the only innocent party, surely it will not allow the guilty to found a claim of property upon a relation to the child whom they have exposed to these disabilities and privations." *Cooley* v. *Dewey*, 4 Pick. 93, 95. The legislature soon awakened to this view of the subject and enacted "that illegitimate children shall be the heirs of their mother, she dying without leaving legitimate issue." Laws 1824, *c.* 79, *s.* 1. While this act shows a little consideration for the illegitimate, discrimination in favor of the guilty parent against the innocent offspring is still apparent. By it, the mother and her heirs are made his heirs unconditionally, while he is permitted to inherit from the mother only in case she is without legitimate issue. In 1845, it was enacted that "when the mother of a bastard has deceased, her real estate shall descend, and her personal estate shall be distributed, by decree of the judge of probate, in equal shares to her legitimate and illegitimate children and their issue." Laws 1845, *c.* 238, *s.* 2. Illegitimates were thus placed upon an equality with legitimates with respect to right of inheritance from the mother. The result of the legislation in New Hampshire upon this subject is now embodied in sections 4 and 5, chapter 196, of the Public Statutes, which are as follows: "The heirs of a bastard, in the ascending and collateral lines, shall be the mother and her heirs; and the bastards and their issue shall be heirs of the mother. When the mother of a bastard dies, her real estate shall descend and her personal estate be distributed in equal shares to her legitimate and illegitimate children and their issue." It would seem to be beyond question that, by section 4, not only the mother, but her kindred both lineal and collateral, may inherit from the bastard. The statute makes

the mother's kindred kin to the bastard for the purpose of inheritance from him. Had the plaintiff died before the defendant's intestate, leaving property, the latter would have inherited the same, as next of kin, notwithstanding the plaintiff's illegitimacy. *Parkman* v. *McCarthy*, 149 Mass. 502, 503.

But it is contended that, notwithstanding collaterals in the ascending line may inherit from the bastard, the bastard's right of inheritance is limited to the estate of the mother. It is not easy to believe, especially in view of the superior claim of the innocent child, that the lawmaker would designedly give to the mother's kindred the right to inherit from her illegitimate child, as kin to the child, and at the same time deny to the child kinship with her kindred for the purpose of inheritance by him from them. But the argument to be drawn from this source is much weakened by the fact that the first act of the New Hampshire legislature on this subject gave the mother right of inheritance from the bastard, while denying to the bastard right of inheritance from her; also by the fact that like discrimination has been deliberately and unequivocally made by the legislatures in other jurisdictions. N. Y. R. S. (1828), *vol.* 1, *p.* 753, *ss.* 14, 19; Mass. R. S. (1836), *c.* 61, *s.* 2; Mass. Laws 1882, *c.* 132; 4 Kent 413; *Pratt* v. *Atwood*, 108 Mass. 40, 41; *Parkman* v. *McCarthy*, 149 Mass. 502, 503; *Matter of Mericlo*, 63 How. Pr. 62.

In view of the fact that our own and the legislatures of other states have deliberately provided that the mother and her kindred should inherit from the mother's illegitimate child, while denying to the illegitimate child the right to inherit from the mother or her kindred, we cannot safely assume that the legislature, by section 4, chapter 196, of our Public Statutes, intended to give the bastard the same right of inheritance from the mother's kindred that the mother's kindred have to inherit from him, merely because that seems to be the more natural and probable course. On the contrary, with such illustrations before us, we must assume that the legislature may have designed the very thing counsel for the plaintiff contends is so improbable, and take the language of the statute itself as our guide in its interpretation. We must also bear in mind that "legislation admitting illegitimate children to the right of succession is undoubtedly in derogation of the common law, and should be strictly construed." *Cope* v. *Cope*, 137 U. S. 682, 685; *Pratt* v. *Atwood*, 108 Mass. 40; *Seely* v. *Insurance Co.*, *ante*, *pp.* 49, 57. Viewed in this way, we find no sufficient warrant in the statute for holding that the legislature intended to confer upon bastards the right to inherit from the mother's kindred as well as from her. On the contrary, the letter of the statute better sustains the contention of the defendants: that it was the intention of the legis-

lature to limit the bastard's right of inheritance, in the ascending line, to the mother.  Apt words were employed by the legislature to confer right of inheritance from the bastard upon the mother's kindred, as well as upon the mother.  It is fair to presume, had they intended that the bastard should inherit from the mother's kindred as well as from the mother, that they would have used equally apt words for that purpose.  Instead of saying "bastards and their issue shall be heirs of the mother," they would probably have said, bastards and their issue shall be heirs of the mother and of the mother's kindred, or words to that effect.  The fact that they did not use some such words, particularly after the explicit language employed to secure to the mother's kindred right of inheritance from the bastard, would indicate quite strongly that they did not intend to confer upon the bastard the enlarged right of inheritance which such words would have expressed.

By the Massachusetts statutes of 1828, chapter 139, it was provided that "every illegitimate child shall be considered as heir-at-law of his mother, and inherit as such when she shall die intestate."  Construing this statute, it was held by the supreme court of Massachusetts that it gave the bastard no right of inheritance from his mother's kindred.  *Pratt* v. *Atwood*, 108 Mass. 40, 41.  Our attention has been called to numerous cases holding that where it is provided by statute that "bastards shall be capable of inheritance or transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother," the bastard's right of inheritance is not limited to the mother, but extends to the mother's kindred.  *Briggs* v. *Greene*, 10 R. I. 495, *Grundy* v. *Hadfield*, 16 R. I. 579, *Garland* v. *Harrison*, 8 Leigh 368, and *Moore* v. *Moore*, 169 Mo. 432, are illustrations of the cases referred to.  It is to be observed that the language of the statutes under consideration in the cases last cited is broader than the language of our statute, and better warrants the conclusion reached in those cases.  Nor is it to be overlooked that such a statute was construed by the United States supreme court adversely to the conclusion reached in the cases relied upon by the plaintiff.  *Stevenson* v. *Sullivant*, 5 Wheat. 207.

It has been said, after a review of the cases, that the trend of judicial thought and the better reasoning are against the conclusion reached in *Stevenson* v. *Sullivant*, and in line with the cases relied upon by the plaintiff (Rodg. Dom. Rel., s. 582); but in view of the more restricted terms of the statute under consideration in the present case, it is unnecessary for us to take sides in the controversy to which the plaintiff has directed our attention with so much ability.  The language of our statute is more like

the Massachusetts statute under which it was held, in *Pratt* v. *Atwood*, that the bastard's right of inheritance was limited to the mother. In view of the peculiar language of our own statute, the decisions of the supreme court of Massachusetts in the interpretation of a similar statute, and the principle that statutes in derogation of the common law should be construed strictly, we feel bound to hold that the plaintiff is without right in the estate of the defendant's intestate.

Our attention has been called by the plaintiff's counsel to *Goodwin* v. *Colby*, 64 N. H. 401, as an authority sustaining his contention. The question there was as to the right of a bastard to take a legacy given to the mother, the mother having died before the testator. The court held that the bastard was entitled to the legacy. It is only necessary to say that the decision followed the plain letter of the statutes controlling the question. P. S., c. 186, s. 12; Ib., c. 196, s. 4. It is not authority for the plaintiff's contention here, because she is asking for something in derogation of the common law, by virtue of a statute which will permit it only by a liberty of construction which we do not feel authorized to indulge.

*Exceptions overruled.*

All concurred.