Strafford,
Feb. 7, 1933.

NORMAN F. YOUNG, *Adm'r*, and *individually*,

*v.*

RUTH E. BRIDGES.

*Cooper & Hall (Mr. Hall* orally), for the plaintiff.

*George & Gregoire (Mr. George* orally), for the defendant.

ALLEN, J. The probate court has jurisdiction to decree the distribution of Fred's personal estate and no reasons are shown for the exercise of authority to declare its inheritance in this proceeding. *Lisbon District* v. *Lisbon,* 85 N. H. 173. The petition in respect thereto is accordingly dismissed.

The life estates of Fred as Addie's widower and of Fred's second wife as his widow in the real estate were not waived for interests in fee. As they have now terminated, they are to be disregarded. Also, Fred's claim against Addie's estate, with no effort for about thirty years to enforce it and with no reasonable explanation for the delay, is barred by laches as a matter of law: *Knight* v. *Hollings,* 73 N. H. 495, 503; *Barrett* v. *Cady,* 78 N. H. 60, 65, 66.

Addie's daughter inherited one-half of her real estate. On the daughter's death this interest descended to her heirs. By Public Laws, *c.* 307, *s.* 5, illegitimates are made heirs of their mother, and hence the defendant as her mother's only issue inherited the interest.

This result cannot be affected by the adoption statute, since the daughter's death upon which her inheritance passed preceded the defendant's adoption. The case is not of an own parent's death after adoption, and no opinion of the adopted child's inheritance from the parent in that situation is expressed.

Nor is the result affected by Public Laws, *c.* 307, *s.* 2, providing that an unmarried minor's estate derived by descent from a parent

shall go to his brothers and sisters or their legal representatives, to the exclusion of the other parent. This statute, designed to prevent the surviving parent from receiving any of the deceased parent's estate indirectly through the later death of a minor child leaving brothers or sisters or their issue, was originally enacted before the statute making illegitimates heirs of their mother, and the latter statute is comprehensive to include mothers dying under as well as over age. It makes no distinction between them and no statutory policy to do so is found. It modifies, but is not modified by, the statute limiting a parent's inheritance in a minor child's estate.

As to Fred's real estate, the defendant has no interest in it. Her mother was not one of his heirs, since he survived her. And the defendant's illegitimacy prevents her from inheriting directly from him. *Reynolds* v. *Hitchcock*, 72 N. H. 340.

*Case discharged.*

All concurred.

On Rehearing. After the foregoing opinion was filed the defendant moved for a rehearing.

*George & Gregoire*, for the motion.

*Cooper & Hall*, opposed, furnished no brief.

Allen, J. The motion points out that the opinion overlooks a statutory amendment enacted subsequent to the decision in *Reynolds* v. *Hitchcock*, 72 N. H. 340. The statute this case construed made illegitimates and their issue "heirs of the mother" (P. S., c. 196, s. 4), and the case held that they were not thereby heirs of their next of kin through her. After the decision the statute was amended to make them "heirs of the mother and her kindred," by Laws, 1905, c. 4. The amendment has since remained in force and its reënactment is found in P. L., c. 307, s. 4.

It is clear that the amendment was passed to enlarge the inheritance. The *Reynolds* case was decided late in 1903 and the statute was amended at the next ensuing legislative session. The decision was presumably in mind and prompted the amendment. *State* v. *Ryan*, 70 N. H. 196, 197; *New Hampshire &c. Corp.* v. *LaMarche*, 85 N. H. 205. The defendant thus becomes an heir of her maternal

grandfather, he being one of her mother's "kindred," unless the adoption statute takes away an adopted child's inheritance from his own relatives.

By this statute (P. L., c. 292, s. 5) inheritance is specifically regulated as follows: "The child so adopted shall bear the same relation to his adopting parents and their kindred in respect to the inheritance of property and all other incidents pertaining to the relation of parent and child as he would if he were the natural child of such parents, except that he shall not take property expressly limited to the heirs of the body or bodies of the adopting parents, and if he dies under age or intestate, leaving property received by gift or inheritance from his natural kindred, such property shall be distributed as if there had been no decree of adoption."

It is said in *Clark* v. *Clark*, 76 N. H. 551, 552: "While it is not the purpose to make adoption in all respects equivalent to the birth of a natural child, it was to have that effect in regard to certain rights and duties." In the ascertainment of these rights and duties the whole matter is one of statutory construction. Since adoption is wholly statutory, all its incidents must be. As it is unknown to the common law, there is no common law policy for regulation of the status. Any differences between the rights and duties of an adopted child and those of one not adopted are to be marked out only by legislation. What the legislature has done, is the inquiry. Limitations upon the status may arise because of other legislation regarded as unaffected by the adoption statute, as in *Morse* v. *Osborne*, 75 N. H. 487; other legislation may retain incidents of the natural parentage, as, for example, P. L., c. 286, s. 1, forbidding marriages between certain relatives; and the adoption statute itself may lessen or enlarge the incidents in their definement.

If the civil law system of adoption may be of aid in determining the incidents of a statutory adoption, it can be so only on the theory that the statute was enacted with the design of incorporating in some measure the system. Adoption statutes do not displace the local laws of parental and family status and of inheritance. The policy and principles of the civil law upon these matters are not incorporated by the spirit of the statutes under any theory of its effect. The civil law at best may only be consulted upon the inquiry how far an adoption accomplishes a full transfer of relations from one's family by blood to that by adoption. And in this limited aspect any reservations of transfer must be largely dependent upon the features of the matter to which they relate. Civil law inheritance not being the same

as common law or statutory inheritance, the civil law's reservation of inheritance from the adopted child's natural relatives does not shed much light to show the reservation in a statutory adoption. The inquiry here relates to the general inheritance statute equally with the adoption statute, which either did or did not amend it. From the standpoint of the inheritance statute, the civil law is of no service in showing if its amendment was intended.

Any purpose of reservation in the adoption statute is negatived by a predominant policy of the inheritance statute against dual heirship. "These two statutes, relating to the same subject, are *in pari materia* and should be construed together as if they are one law." *Walworth's Estate*, 85 Vt. 322.

The mere fact that a statute and the civil law both relate to the same subject, signifies no uniformity of treatment. The civil law not prevailing here, it is more probable than not that the legislature passed the adoption statute without reference to it. The statute did not borrow that law, but was enacted as a measure of expediency in the broad view of the wisdom of adoption as a social status based on the experience of countries and states where it was already established. Accordance of our law and the civil law in respect to social and economic policy in all unspecified respects, and with no reference to its bearing on our local policy in other relations, is not to be declared to be shown. Account is to be taken of local policy in saying how far adoption affects and is affected by other legislation. If it has any bearing, the civil law source of adoption is of but little importance in the ascertainment of the local policy. It must either be clearly recognized by the statute or correlate with local principles. On the probabilities, the omission of sections of the civil law relating to the subject implies their exclusion from the statute as much as that they are to be read in because not excepted.

"The statutes, differing widely in their terms, which have been passed in recent years for the purpose of establishing between a minor and one not his parent, the legal obligations and duties attached to the natural relation of parent and child, as well as for conferring upon any person a capacity, more or less limited, of succeeding to the property of one not his parent, must be understood and applied in accordance with the terms of each statute in view of our own conditions, and their meaning and effect are not necessarily controlled by the analogies of a Roman adoption." *Woodward's Appeal*, 81 Conn. 152.

By section 4 of the adoption statute the adoption decree makes the child "the child of the petitioner to all legal intents and pur-

poses." Giving language its ordinary meaning and giving weight to the policy the statute discloses, the conclusion follows that adoption establishes a change of status by which in general the relatives become strangers in legal aspect and others take their place. The view taken in *Baker* v. *Clowser* (Ia.), 138 N. W. 837, that the statute "in its broadest interpretation only attempts to fix the relation between the adopted child and the adopting parent," is too narrow when the natural and expected consequences of the adoption are regarded. Nor does the rule employed in many cases elsewhere that statutes in derogation of the common law are to be strictly construed, have any forceful bearing here. If a statute on a subject not recognized by the common law may be thought derogatory thereto, the rule has here been virtually suppressed by the predominant rule that all legislation shall be fairly construed according to its evident purpose. *Faulkner* v. *Keene*, 85 N. H. 147, 154, 155; *Mulhall* v. *Company*, 80 N. H. 194; *Clough* v. *Railroad*, 77 N. H. 222, 230, and cases cited.

The statute does not seek to wholly destroy the natural ties of affection and interest between an adopted child and his own relatives. But broadly the law looks upon the child as it does a natural child of the adopting parents. The general purpose of the statute to free the child from his status arising from his relationship by blood and to give him a new status as between him and those adopting him and their kindred, seems free from doubt. He is taken in legal contemplation from his natural family and made a member of a new family. Becoming the legal child of the petitioner, he enters the latter's family with nearly full standing as though one of its blood. The natural incidents therefrom are expected to follow.

The adopting parents' right and duty to take the child into their own family and rear him as their own ally him naturally in almost exclusive legal interest with them and their family. Adoption thus signifies far more than a change of legal parentage. A new home takes the place of the former one. Whatever may be retained of relations with the child's natural kindred, the incidental consequence of the statute is to reduce them in the law to those of strangers in the absence of saving and special features. Duality in legal relationship becomes at best limited to few and exceptional situations. " . . . where properties necessarily inhere in the thing, they can not be separated from it. Having affirmed the existence of the legal status, the properties inseparably connected with it should also have been affirmed as governing facts in the case." *Humphries* v. *Davis*, 100 Ind. 274. Adoption is meant to be a change more than an addition. The

new status supersedes the former one, with only the qualifications prescribed by statutory law. Limitations and exceptions of the new status as compared with the former one and the reservations of the former one must be established either by the adoption statute itself or by other legislation prevailing over it. When it conflicts with normal principles of equality and fairness of adjustment to imply a reservationship of legal relationship with the child's own relatives, the legislation is to be read, if it may be, in such manner as to avoid the conflict. Thus to read it is only to employ a simple and ordinary rule of construction.

The section of the statute relating to inheritance is to be read with reference to the general design of the statute as a whole. The provision of section 4 that by the adoption decree the child acquires the status of a natural child of the adopting parents, is a guiding signpost. It controls except as other sections or statutes cut down and restrict. A natural child "to all legal intents and purposes" has the right of inheritance from his own next of kin, and his status as though a natural child of his adopting parents therefore gives him the right from them and their kindred. This right is narrowed by section 5. By it the child may not take estates "expressly limited to the heirs of the body or bodies of the adopting parents," but otherwise may inherit from them and their kindred. The section thus seems designed to limit the inheritance more than to define it. So far as definement goes, it merely confirms the consequences of the full status of a natural child of the adopting parents given by section 4.

Section 5 also gives the child's next of kin by blood property received from his own relatives if he dies intestate in respect to it. The reference in the section to such property when received by "inheritance" is indecisive and without bearing on the right of the child to inherit. The word is clearly used to include property coming to the child from his own relatives by will. And property coming from them by heirship may have been received before the adoption. The reference thus gives no implication as to the effect of the adoption in retaining or terminating the right to inherit from them. Implying that in the child's intestacy his other property descends to those who would be his heirs if he were an own child of his adopting parents, the section imposes a restriction preventing all his property from thus passing. The implication follows and accords with the broad scope and effect of adoption expressed in section 4. It does not enlarge it or do more than to specify an item in restriction of the effect. The statement of the restriction is of necessary service to lessen the general

effect. The important purpose of section 5, to limit instead of to define, is thus again manifested.

Conceding weight to the argument that an adoption is for the child's interest and that favoring incidents of his former status compatible with the new one should be preserved if not expressly or by necessary implication destroyed by the adoption statute, the argument is largely offset by the general principle. The gain from the adoption is a gain on the whole. The new status is a better one than the former. The loss is at least compensated. Moreover, the inequality by which the child's own relatives may only limitedly inherit from him while he may inherit both from them and from his adopting parents and their kindred, deserves notice. He would thereby gain an undue advantage over unadopted children. He would be given the inheritance they have and a new one in addition. The statute is hardly to be construed in a manner to produce such a result. Intended to help to give the child as good a chance as children in general have, it was not its plan to give him a better one. Only the circumstances of a given case may do this.

The argument for duality is also weakened in cases, as here, where the adopted child's own next of kin do not die until his majority. The statute primarily seeks the welfare of minors. The policy to avoid favors and preferences among adults has some tendency to indicate their denial to minors. The amendment of the statute permitting the adoption of adults gives them by implication the same rights of inheritance an adopted minor has. If the minor has a dual inheritance, so must the adult. A bestowal of benefit so unusual and working natural unfairness as to others would seem to require definite expression of statement or compelled implication of a purpose to grant it.

In cases of adoption by a child's own relatives a peculiar difficulty is encountered. Such adoptions are frequent, if not in a majority. Whether there is then a circumstantial identity of the natural and adopting families, or whether the statute implies a change of legal relationship limited to the parents and the child, is an inquiry not readily answered and not here needing answer. Although the adoption statute makes no specific distinction between cases where the adopting parents are strangers and cases where they are relatives, its implications and other legislation may impose a difference of treatment. But the result would clearly be either to maintain former legal kinship except as to parents or to establish a new kinship. It would be one or the other and not both. The policy of the statute is to be held to accord with natural and normal principles if it may be,

and a legal relationship in a dual capacity between a child and his own relatives is not within the contemplation of the statute. If it were, a child adopted by his grandfather might become his own father's legal brother.

A statute in Massachusetts making the child an heir of the adopting parents and retaining his inheritance from his own kindred was held in *Delano* v. *Bruerton*, 148 Mass. 619, to give the child no inheritance from such parents when they were his natural next of kin. Dual inheritance being enacted, logically it led to inheritance in a dual capacity from the same source, and the court seems to have gone almost beyond the extremes of construction to avoid so extreme a situation. The purpose of a statute to except certain cases from its terms is not ordinarily shown merely by reasons of expediency and justice when the policy involved is wholly legislative. Exceptions not enacted because not thought of at the time are hardly to be judicially established when situations arise which invoke them only upon an argument of fairness. But when no dual inheritance has been explicitly enacted, the argument against its implication is reënforced by the unnatural and abnormal possibilities to which it leads. The argument is in avoidance of implications leading to injustice and not to establish exceptions to prevent injustice. It is not to be assumed that unrestricted dual inheritance was intended to be granted. The probabilities negative a purpose to give such an inheritance when the parent by adoption is also the child's natural next of kin. Partial dual inheritance properly requires express or necessarily implied enactment, and without the enactment the general principle of the transfer of status effected by adoption prevails. Inheritance from the adopting parents and their kindred being granted, omission of express statement to deprive the child of inheritance from his own next of kin does not signify its retention. The conclusion is that no dual inheritance was intended.

Slight authority upon the issue is found elsewhere. The view of text writers that a dual inheritance is given when the statute does not clearly bar it, has support from very few adjudicated cases. If cases where the statute does not definitely provide for the descent of an adopted child's estate are in any way analogous, they have but little bearing. By normal legislation one may not leave two sets of heirs, and in such cases the inquiry is alternative between natural kin and kin by adoption. The source of the child's property is sometimes given important regard, but such a test must have undoubted legislative adoption. The special clauses or phraseology of the statute are

often determinative, but their localized authority gives their local construction no widespread value. The use in many cases of the rule of strict construction has been adverted to. No accepted and prevailing view is found by which the incidents of adoption are determined when the legislation is not clearly expressed in respect to them. As construed the various statutes show no uniform or consistent treatment of these incidents, and local views disclose hardly more than local policy.

The difficulties attending the solution of the issue are admittedly serious. Considerations of comparison and contrast are not readily balanced and naturally lead to divergent views. But if not free from doubt, the conclusion here reached is believed to state the legislative will.

*Former result affirmed.*

All concurred.