Rockingham, June 28, 1945. } No. 3539.

VIRGINIA A. CLAPP *v.* ALDO BRIGHI.

*William H. Sleeper* for the plaintiff.

*Charles F. Hartnett* for the defendant.

BURQUE, J. The statute provides that when, in bastardy proceedings, the respondent has been found chargeable, "the court shall order him to pay such sum as they deem reasonable to the mother of the child . . . , to be applied for the maintenance of the child." R. L., c. 128, s. 4.

The adoption statute provides: R. L., c. 345, s. 5, "The child so adopted shall bear the same relation to his adopting parents . . . in respect to the inheritance of property and all other incidents pertaining to the relation of parent and child as he would if he were the natural child of such parents. . . ." *Ib.* s. 6, "The natural parents of the child shall be deprived by the decree of all legal rights as respects the child; and the child shall be freed from all obligations of maintenance and obedience as respects his natural parents."

When we apply the above to the instant case, and read the two sections together, the summarized language is this: that the adopted child bears the same relation to his adopting parents in respect to all incidents pertaining to the relation of parent and child, and is freed from all obligations of maintenance as respects his natural parents. Though the latter phraseology may not be as clear as it could be, it can be construed to mean but one thing, that the natural parents are relieved from any further legal duty and obligation to maintain the child. If this is so as to legitimate parents, a *fortiori* must it be so in regard to a putative father whose obligation to support the child is the result of a specific order of the Court, and whose consent to adoption is not required.

As stated in *Young* v. *Bridges*, 86 N. H. 135, 140: "But broadly the law looks upon the child as it does a natural child of the adopting parents. The general purpose of the statute to free the child from his status arising from the relationship by blood and to give him a new status as between him and those adopting him and their kindred, seems free from doubt. He is taken in legal contemplation from his natural family and made a member of a new family. . . . The adopting parents' right and duty to take the child into their own family and rear him as their own ally him naturally in almost exclusive legal interest with them and their family. . . . A new home takes the place of the former one. Whatever may be retained of relations with the child's natural kindred, the incidental consequence of the statute is to reduce them in the law to those of

strangers in the absence of saving and special features. Duality in legal relationship becomes at best limited to few and exceptional situations. . . . Adoption is meant to be a change more than an addition. The new status supersedes the former one, with only the qualifications prescribed by statutory law."

It would seem clear that, under the statute providing for maintenance of bastardy children (R. L., c. 128), orders made under the statute cannot be intended to continue after the adoption of an illegitimate child. It is significant that section 4 of that chapter provides that the order is merely that the putative father be ordered "to pay such sum as they deem reasonable . . . for the maintenance of the child." In view of the admitted duty of the adopting parent to support the child, and in view of the clear statutory language of the adoption statute terminating the duties as well as the rights of the natural parents, it is clear that the Superior Court correctly ruled that the order in the bastardy proceeding was terminated, as a matter of law, by the adoption. The obligation to support one's child is statutory. *Kelley* v. *Davis*, 49 N. H. 187, 189. Failure and neglect to do so may result in a court order to pay for such support, and noncompliance with the order entail punishment. R. L., c. 340, *ss.* 15, 18. Adopting what is said in *Young* v. *Bridges, supra,* 142, that adoption effects a complete transfer of family status, and is not intended to give the adopted child any "undue advantage over unadopted children," it follows that bastardy and adoption statutes cannot be brought in operation together and simultaneously so as to give the adopted child, born illegitimate, a better status than if it had been born legitimate and then adopted. See *State* v. *Byron,* 79 N. H. 39, 41. True it is the *Young* case deals with inheritance, but the result would be the same if the child had the advantage of being supported by two fathers, whether one was his legitimate or illegitimate one, and the other his adoptive one. "The statute [of adoption] is hardly to be construed . . . to produce such a result," (*supra,* 142) of two fathers being required by law to support the child.

In the absence of information as to how and when the petitioner came to discontinue his payments and as to the ground upon which the Court relied to refuse to have the petitionee reimburse the petitioner for payments made to her after the adoption, we are unable to pass on plaintiff's exception to the Court's refusal to order such reimbursement. This may be entirely within the Court's discretion, depending on the facts and circumstances. We have no

434

authority to say that the petitioner is entitled to reimbursement as a matter of law.

*Exceptions overruled.*

MARBLE, C. J., was absent: the others concurred.