Stillman E. WILBUR, Jr.,
Petitioner, Appellee,

v.

Garrell S. MULLANEY et al.,
Respondents, Appellants.

No. 72–1348.

United States Court of Appeals,
First Circuit.

Submitted Feb. 20, 1974.

Decided April 30, 1974.

As Amended May 10, 1974.

---

**1304**

Vernon I. Arey, Asst. Atty. Gen., with whom Fernand LaRochelle, Asst. Atty. Gen., was on brief, for respondents, appellants.

Peter J. Rubin, Portland, Me., by appointment of the Court, with whom Bernstein, Shur, Sawyer & Nelson, Portland, Me., was on brief, for petitioner, appellee.

## OPINION ON REMAND

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

We are faced again with the duty of considering the propriety, in the light of In re Winship, 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, of imposing upon a defendant indicted for murder, once an unlawful killing had been shown beyond a reasonable doubt, the burden of proving that his conduct met the statutory definition of manslaughter as distinguished from murder, or, as the Maine court, post, put it, of reducing the degree of the crime from murder to manslaughter.

The facts are these. At the trial the state's case against Wilbur, the present petitioner for a writ of habeas corpus, hereinafter defendant, was based upon circumstantial evidence and defendant's pretrial admissions that he had inflicted such severe injuries upon the deceased with his fist and a blunt instrument that death had resulted within a few minutes. Although he did not testify or offer any evidence, defendant's theory of defense, as asserted in his pretrial statement introduced in full by the state, was that although he had struck the deceased, it was in the heat of passion suddenly provoked by an indecent homosexual overture, and that, therefore, he had not acted with malice aforethought, and was guilty of manslaughter, not murder. The court instructed the jury that it was the state's burden to prove beyond a reasonable doubt that the defendant had killed the deceased, and that the killing was intentional and unlawful. It also informed the jury that malice aforethought was an "essential and indispensable element of the crime of murder," but it charged that "malice aforethought may . . . be implied from an unlawful killing" and "is presumed to be present in all homicides until the contrary appears from the circumstances of alleviation to be made out ["by a fair preponderance of the evidence"] by the defendant."

In In re Winship the Court held that the Due Process Clause requires the state to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. On appeal from his conviction for murder, the instant defendant took the position that malice aforethought, which he equated with premeditation, was an intent more criminal in character than one formed under circumstances recited in the statute defining manslaughter, post, and that such higher intent was an element of the crime of murder and hence part of the state's burden of proof rather than a matter for him to disprove. The Maine court, however, held that under the law of Maine murder and manslaughter were but a single crime, felonious homicide, manslaughter being a degree thereof;

and that the defendant has the burden of proving by a fair preponderance the "reductive factors (sudden provocation and heat of passion)". State v. Wilbur, Me., 1971, 278 A.2d 139, 145. It reasoned that the "policy presumption [of malice], bearing as it does not on the guilt or innocence of felonious homicide but only upon the degree of and possible punishment for such homicide, should be accorded such procedural force as is required to make it truly effective" and that it did not anticipate that "*Winship* will be so extended as to reach the procedural requirements of *Conley* and *Knight* [post] as now interpreted." *Id.* at 146. On a petition for habeas corpus the district court, and ultimately ourselves, disagreed. Wilbur v. Mullaney, 1 Cir., 1973, 473 F.2d 943.

Thereafter, in State v. Lafferty, Me., 1973, 309 A.2d 647, the Maine court rejected both our interpretation of the Maine law and the propriety of our effort to interpret it, as a result of which the Supreme Court, on petition for certiorari, vacated our judgment and ordered us to give "further consideration in light of [*Lafferty*]." 414 U.S. 1139, 94 S.Ct. 889, 39 L.Ed.2d 96 (1974).

In our prior opinion we were influenced by the fact that separate statutes defined murder and manslaughter;[1] and by references in State v. Knight, 1857, 43 Me. 11, 33, to murder and manslaughter as "offenses . . . [which] import different degrees of criminality, and are punished with different degrees of severity," and in State v. Conley, 1854, 39 Me. 78, 88 to manslaughter as "wanting" "all the elements of murder." We now recognize that the separateness of the statutes is not deemed of any ulti-

mate significance by the Maine Supreme Judicial Court and that both *Knight* and *Conley*, in addition to the language which earlier impressed us, contain language looking to the unitary nature of the crime embracing both murder and manslaughter, which language the Maine court deems controlling.

That the distinction between separate crimes and degrees of a single crime has not always been clearly conveyed is revealed in the charge given to the jury that convicted Wilbur. The trial court, after announcing that it would "describe the elements of the crimes of murder and manslaughter," which it then did,[2] concluded as follows:

"Now I have given you the general definitions of the crimes of murder and manslaughter with some further explanations; quoting largely, using largely the language of our court . . . from which you can see clearly the definitions of the two offenses."

Nevertheless, we now take as a given that there is "a single crime, *unlawful (felonious) homicide.*" *Lafferty*, ante, 309 A.2d at 663 (Emphasis in orig.). We believe we may have erred in focussing in our previous opinion upon the structure of the Maine law, concededly an internal matter, Memorial Hospital v. Maricopa County, (2/26/74) 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306; instead of upon the consequences, from the standpoint of the defendant, in order to ascertain whether they were of constitutional proportions; or, as the *Lafferty* court put it, to see that state law as definitively interpreted "trespasses on no federally guaranteed constitutional rights." 309 A.2d at 662. The question

---

1. *Murder*

 Section 2651. Definition
 Whoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder and shall be punished by imprisonment for life.
 *Manslaughter*
 Section 2551. Definition
 Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without express or implied malice

 aforethought, . . . or commits manslaughter as defined by the common law, shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 20 years . . . .

2. The court spoke with apparent approval of this portion of the charge. "The jury [was] . . . thoroughly instructed as to the elements of unlawful homicide, murder and manslaughter." State v. Wilbur, 278 A.2d at 144.

is more properly put: does the fact that Maine regards murder and manslaughter as a single crime, denominated felonious homicide, but differing in degree, avoid *Winship's* strictures protecting "the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" within the Court's intendment?

We start with a consideration of the measure of the difference effected by the concept of "reductive factors" of provocation and heat of passion as to which defendant has the burden. Under Maine law "malice aforethought" is not to be thought of as a general equivalent of premeditation. The term is "not a designation of any subjective state of mind existing *as a fact.*" *Lafferty,* ante, 309 A.2d at 664, quoting State v. Rollins, Me., 1972, 295 A.2d 914, 920. (Emphasis in orig.) Whether a killing has taken place with the subjective intention that death result (*i. e.,* "a 'premeditated' killing," *Lafferty,* 309 A.2d at 670, Wernick, J., concurring) or death has been caused without any specific subjective intent but by reckless or brutal conduct, "malice aforethought," "a fictional, metaphysical term of art" applicable to both acts, may be "extinguished by the fact that heat of passion upon sudden, adequate provocation spawned the conduct." *Id.,* 672. Such facts (heat of passion, causation, sudden and adequate provocation) do not eliminate criminality but are "the facts legislatively assigned in advance to bind a judge's sentencing discretion" (*id.,* at 667) and "mitigate the blameworthiness of the criminality." *Id.* at 671. Yet there is no question but that what is required to extinguish "malice aforethought" are factual matters.[3] The contention is that, not being addressed to disproof of criminality but to proof of lesser blameworthiness, the placing of the burden on an accused to prove such factual matters falls beyond the reach of *Winship.*

In determining the constitutionality of a state statute (we draw no distinction between statutory and court-made law) the Court said in St. Louis Southwestern Ry. Co. v. Arkansas, 1914, 235 U.S. 350, at 362, 35 S.Ct. 99, at 102, 59 L.Ed. 265,

"Upon the mere question of construction we are, of course, concluded by the decision of the state court of last resort. But . . . [w]e must regard the substance, rather than the form, and the controlling test is to be found in the operation and effect of the law as applied and enforced by the state."

As recently as In re Gault, 1967, 387 U. S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, where the state court had construed its statute as providing that certain proceedings were not even criminal, the Court disregarded that conclusion, holding that from the substantive, and hence constitutional standpoint they must be regarded as criminal. It said, at pp. 49–50, "To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience." 387 U.S. at 49–50. *See also* Duncan v. Louisiana, 1968, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491.

In terms of substance the different consequences attaching to manslaughter and murder from the standpoint of the defendant in the state of Maine are obvious. For manslaughter the punishment may range from a nominal fine to "a fine of not more than $1000 or . . . imprisonment for not more than twenty years." 17 M.R.S.A. § 2551, ante. A defendant convicted of murder "shall be punished by imprisonment for life." 17 M.R.S.A. § 2651, ante. In addition, the *Lafferty* court, 309 A.2d at 673, took exception to our attaching significance to the fact that the public draws a distinction between a conviction for murder and a conviction for manslaughter, a distinction eloquent-

---

3. Indeed, we may think the fact that it is a circumstance peculiarly within the knowledge of the defendant is one of the reasons for the Maine rule. *See* 309 A.2d at 664.

ly noted as far back as Blackstone.[4] The Court, however, in making constitutional assessments in Duncan v. Louisiana, ante, said, at 160, "The penalty authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments.'" We believe we are commanded to consider this factor not only by *Duncan*, but by *Winship* itself.

The *Winship* rationale is explicit.

"The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused *during a criminal prosecution* has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." 397 U.S. at 363. (Emphasis supplied)

We cannot think that how these substantial differences with respect to liberty and stigma are achieved, vis-a-vis the defendant, is to be dismissed as a mere "procedural requirement," State v. Wilbur, ante, at 146, or, to put it another way, is beyond the reach of *Winship*, whose expressed holding is that the procedural requirement of burden of proof is a constitutional matter. Whether a defendant is to be regarded as a murderer, to spend his life in prison, or, as guilty of manslaughter, is to serve a term of years, with the possibility of parole—or possibly only fined—depends upon the absence, or existence, of certain facts. We cannot accept that simply by calling them "reductive factors" the determination of these facts occurs other than "during a criminal prosecution." Were it otherwise, the important interests that concerned the court in *Winship* could be diluted to whatever degree judicial or legislative draftsmen might elect.

 In holding that a burden of proof cannot be placed upon the defendant by the process of defining the crime we emphasize that we are not deciding that proof of intentional homicide can never justify a finding of murder to the extent that there must necessarily be an acquittal unless the state by evidence affirmatively disproves the existence of factors which would show the offense to be manslaughter. We have no quarrel with a rule that proof of certain facts may justify inferences, and we recognize when a jury is told of a permissive inference arising from the state's evidence unless the defendant makes a showing, or an "explanation," *cf.* Barnes v. United States, 1973, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380, that in practical effect it may place upon him a burden of going forward. *See Barnes* at 846 n. 11. But this cannot be the strict burden of going forward in the sense of going-forward-persuasively-or-else-you-lose. *See, e. g., Barnes* at 845 n.9. What we are rejecting is the principle spelled out in State v. Wilbur, 278 A.2d at 146, where the court said,

"[We do not accept the view that] the defendant is required to do no more than generate the issue leaving the State, if it can, to negate the reductive factors by proof beyond a reasonable doubt. We are not persuaded to this view which tends to emasculate the presumption and defeat the very purpose for which sound public policy has raised it. . . . [W]here under stated conditions the presumption of malice is raised, the burden of proof shifts to the defendant to reduce murder to manslaughter."

Placing the burden on a defendant to reduce murder to manslaughter may be sound public policy if the state's purpose is to facilitate convictions for murder, but *Winship* teaches that it is constitutionally improper to facilitate convictions at the cost of imposing a burden of proof upon the defendant. The burden of proof must be on the state throughout; not sometimes on the state, and sometimes on the defendant.

The order affirming the order of the district court is reinstated.

---

4. See Blackstone, Commentaries on the Laws of England, 178; Malice is the "grand criterion which now distinguishes murder from manslaughter and other forms of killing." (Am. ed. Phila. 1772). *See also* Mueller, Comparative Criminal Law in the United States 134 (1970).