**ROBIN C., o/b/o Stacey D.**

v.

**Richard SCHWEIKER, Secretary, Health and Human Services.**

**Civ. No. 80–306–D.**

United States District Court,
D. New Hampshire.

Feb. 10, 1982.

Jay L. Hodes, Manchester, N.H., for plaintiff.

W. Stephen Thayer, III, U.S. Atty., Concord, N.H., for defendant.

**OPINION AND ORDER**

DEVINE, Chief Judge.

The instant action was brought pursuant to 42 U.S.C. § 405(g), which grants federal

courts the authority to review final decisions of the Secretary of Health and Human Services regarding Social Security benefits. The minor child herein seeking to secure Child Insurance benefits, 42 U.S.C. § 402(d)(1), *et seq.*, through the initiation of this action by her mother, is alleged to be the issue of a decedent who was a fully insured wage earner for Social Security purposes.

The decision of the Administrative Law Judge denying plaintiff benefits under the Social Security Act ("Act"), became the final decision of the Secretary on June 9, 1980, when the Appeals Council declined further review of the case. The relevant facts of this case were all previously stated in this Court's Opinion and Order dated March 20, 1981, and shall not be here repeated.

The applicable law, § 202(d) of the Act, 42 U.S.C. § 402(d), provides for the payment of child's insurance benefits to every unmarried child, under age eighteen, of an individual who dies fully insured if such child has filed an application for such benefits, 42 U.S.C. §§ 402(d)(1)(A) and (B), and was dependent on the individual at the time of his death. 42 U.S.C. § 402(d)(1)(C)(ii). A legitimate or legally adopted child is deemed legitimate and therefore automatically entitled to benefits under the Act. 42 U.S.C. § 402(d)(3). An illegitimate child may achieve the status of a legitimate child (and hence be deemed dependent and thus entitled to benefits) if he can make one of four showings:

1) That the infant is the child of a marriage rendered invalid by some legal insufficiency [42 U.S.C. § 416(h)(2)(B) ];

2) That the deceased wage earner had (a) acknowledged the infant claimant in writing as his or her son or daughter, or (b) been decreed by the court to be the claimant's parent, or (c) been ordered by a court to support the claimant on the basis of parenthood [42 U.S.C. § 416(h)(3)(C)(i) ];

3) That the deceased wage earner was actually living with or contributing to the support of the infant claimant at the time of the wage earner's death (shown by evidence satisfactory to the Secretary) [42 U.S.C. § 416(h)(3)(C)(ii) ];

4) That the infant would be entitled to inherit personal property from the deceased wage earner under the law that would be applied in determining the devolution of intestate personal property by the courts of the wage earner's state of domicile at death [42 U.S.C. § 416(h)(2)(A); *Mathews v. Lucas*, 427 U.S. 495, 514, n. 17, 96 S.Ct. 2755, 2766, 49 L.Ed.2d 651 (1976) ].

*Allen v. Califano*, 456 F.Supp. 168, 170 (D.Md.1978). The ALJ found that the child did not meet the requirements of the first three criteria and was precluded from meeting the fourth because of the statutory bar presented by N.H. RSA 561:4.

The Court found the Secretary's decision was supported by substantial evidence regarding the first three questions, and therefore the New Hampshire intestacy statute was drawn into question. Plaintiff had specifically alleged in the complaint that the statute here at issue, N.H. RSA 561:4, which is addressed to children born of unwed parents, was violative of the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As this Court found said statute had not previously been challenged on these grounds, and we found the issues compelling and determinative of the case before us, in the interest of comity this Court certified the question to the New Hampshire Supreme Court pursuant to N.H. RSA 490:App. Index, Rule 21.

The New Hampshire Supreme Court responded by order file-dated with this Court on December 7, 1981, in which the state court declined to answer the question certified. Thus, having previously allowed the New Hampshire Supreme Court the first opportunity to construe the New Hampshire statute at issue, this Court must now determine its constitutionality.

As has been previously stated by the New Hampshire Supreme Court, "[t]he problems resulting from the separation of the increasing number of unwed parents who

have been living together for a period of time as man and wife are rapidly emerging. The legislature has seen fit as yet only to deal in partial fashion with these problems...." *Locke v. Ladd*, 119 N.H. 136, 140, 399 A.2d 962 (1979). N.H. RSA 561:4, together with N.H. RSA 457:42 (legitimation by marriage), 460:29 (this statute, which provides for legitimation by the putative father, was challenged in *Locke v. Ladd, supra*), and Chapter 168–A (allowing the mother, child, and certain other parties to bring a paternity action), appear to constitute the full framework concerning the rights of children born out of wedlock.

The statute at issue here, N.H. RSA 561:4, provides:

> *Inheritance of Children Born of Unwed Parents.* The heirs of a child born of unwed parents in the ascending and collateral lines shall be the mother and her heirs; and children both of unwed parents and the issue of such children shall be heirs of the mother and her kindred.

The minor child in this case falls within the purview of this statute as she is the offspring of unwed parents. The clear result of applying said statute is that should unwed parents die intestate, the child may only inherit from the mother and her kindred, not from the father (or his kindred). Such is a limitation placed on all children born out of wedlock except where either N.H. RSA 457:42 or N.H. RSA 460:29 are applicable.

N.H. RSA 457:42 states:

> *Marriage of Parents.* Where the parents of children born before marriage afterwards intermarry, and recognize such children as their own, such children shall be legitimate and *shall inherit equally* with their other children under the statute of distribution.

(Emphasis added.) "A child can be legitimated under N.H. RSA 457:42 only when his natural parents intermarry." *Hansen v. Hansen*, 119 N.H. 473, 475, 402 A.2d 1333 (1979). The only other statute which may effectuate a change in the right of a child of unwed parents from the status set forth in N.H. RSA 561:4 is N.H. RSA 460:29, which states:

> *Petition to Legitimate Child.*
>
> I. *The putative father* of any child born out of wedlock *may apply* by a verified written petition filed in a special proceeding in the superior court of the county in which he resides, praying that such child be declared legitimate. The mother, if living and available, shall be a necessary party to the proceeding, and the full names of the father, mother and the child shall be set out in the petition. If it appears to the court that the petitioner is the father of the child, the court may thereupon declare and pronounce the child legitimated; and the full names of the father, mother and the child shall be set out in the court order decreeing legitimation of the child.
>
> II. *The effect of legitimation shall be* to impose upon the father all the obligations which fathers owe to their lawful issue and *to entitle such child by succession, inheritance or distribution to real and personal property by, through, and from his father and mother as if such child had been born in lawful wedlock. In case of death and intestacy, the real and personal estate of such child shall be transmitted and distributed according to RSA 561* as if he had been born in lawful wedlock.

(Emphasis added.) Thus, the only two statutory provisions by which the child of unwed parents can inherit from his intestate father (or his kindred) are either where the natural parents intermarry subsequent to the birth of said child or where the putative father brings a legitimation petition in state court. The Court notes that while there are procedures available under N.H. RSA Ch. 168–A for the mother, the child, or certain other parties to bring a petition to establish the putative father's paternity, the successful result of said proceeding only establishes the father's liability for the cost of the pregnancy and support of the child, and does not implicate, influence, or alter the child's standing vis-a-

vis the devolution of the father's estate should the father die intestate.[1]

■ "Our inquiry under the Equal Protection Clause does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment." *Lalli v. Lalli*, 439 U.S. 259, 273, 99 S.Ct. 518, 527, 58 L.Ed.2d 503 (1978). A review of the New Hampshire statutory framework concerning the right of an illegitimate child to inherit from his or her putative father leads the Court to the inextricable conclusion that the wholesale exclusion created by N.H. RSA 561:4 is unconstitutional. "The Illinois statute in *Trimble [v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)] was constitutionally unacceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents." *Id.* at 273, 99 S.Ct. at 527.

Under the New Hampshire statutes, the only other avenue besides intermarriage which may lead a child born out of wedlock to inherit from the intestate father's estate is found in N.H. RSA 460:29. As noted above, the procedure set forth therein only provides for the initiation of the action by the putative father. Such a distinction is not persuasive enough to cause a different result from that reached in *Trimble v. Gordon, supra.* Such a narrow exception cannot be found to " 'grant to illegitimates *in so far as practicable* rights of inheritance on a par with those enjoyed by legitimate children,' Commission Report 265 (emphasis added), while protecting the important state interests we have described." *Lalli v. Lalli, supra,* 439 U.S. at 274, 99 S.Ct. at 527.

The policy reasons behind the limitation of the rights of children born out of wedlock to inherit as set forth in the statutory framework of N.H. RSA 561:4, 457:42, and 460:29 are somewhat difficult to discern.[2] But even granting to the New Hampshire Legislature those policy reasons which were considered important in the legislative framework found in *Lalli v. Lalli, supra* at 271–73, 99 S.Ct. at 526–527, to wit: orderly

1. The pertinent sections of chapter 168–A which evince this conclusion are set forth below:

   168–A:1 *Obligations of the Father.* The father of a child which is or may be born of unwed parents is liable to the same extent as the father of a child born in wedlock, whether or not the child is born alive, for the reasonable expense of the mother's pregnancy and confinement and for the education and necessary support of the child. A child born of unwed parents includes a child born to a married woman by a man other than her husband.

   168–A:2 *Enforcement.* Paternity may be determined upon the petition of the mother, child, or the public authority chargeable by law with the support of the child. If paternity has been determined, the liabilities of the father may be enforced in the same or other proceedings (1) by the mother, child, or the public authority which has furnished or may furnish the reasonable expenses of pregnancy, confinement, education or necessary support, and (2) by other persons including private agencies to the extent that they have furnished the reasonable expenses of pregnancy, confinement, education or necessary support.

   168–A:4 *Remedies.* The superior court has jurisdiction of a proceeding under this chapter and all remedies for the enforcement of judgments for expenses of pregnancy and confinement for a wife or for education or necessary support for legitimate children apply. Upon the prayer of the petitioner the court shall schedule an immediate hearing, as in the cases of prayers for temporary relief in divorce and legal separation proceedings, on the issue of whether, and how much, the alleged father of the child in question shall be required to post in advance as security for the payment of maternity and other expenses for which he may ultimately be held liable under this chapter. The court has continuing jurisdiction to modify or revoke a judgment for future education and necessary support. All remedies under the Uniform Reciprocal Enforcement of Support Act are available for enforcement of duties of support under this chapter.

2. The historical evolution of N.H. RSA 561:4, which originally was enacted in 1822, can be found in the case of *Reynolds v. Hitchcock,* 72 N.H. 340, 56 A. 745 (1903). The statute in substance has remained unchanged since 1905. 1905 N.H. Laws Chapter 4, p. 400. As is apparent, it is therefore somewhat difficult to find any legislative history.

administration of estates; minimized possibility of delay in said administration; difficulty and harassment of exposing spurious paternity claims, the Court finds the narrowly confined exceptions too tenuous to be justified by said state interests. *Id.* at 273, 99 S.Ct. at 527. Thus, even when considered in the context of other statutes which comprise the statutory framework concerning children born out of wedlock, the limited exceptions provided by said framework lead this Court to find that "[t]he reach of the statute [is] far in excess of its justifiable purposes". *Id.* at 273, 99 S.Ct. at 527. Therefore, this Court finds and rules that N.H. RSA 561:4 is unconstitutional.

The Court reaches this conclusion with circumspection as to its responsibility in a case of this nature. We have attempted to heed the principle that

> [i]t is well-established law that 'state courts are the ultimate expositors of state law' and the federal courts are bound by the constructions placed upon state statutes by state courts absent extreme circumstances. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *Pagan Torres v. Negron Ramos*, 578 F.2d 11, 14 (1st Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). 'Construction' in this sense refers to the structure of a statute, what its words mean, and how it operates. *See, e.g. Wilbur v. Mullaney*, 496 F.2d 1303, 1305 (1st Cir. 1974), *aff'd*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Brown v. Ohio*, 432 U.S. 161, 167, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Gurley v. Rhoden*, 421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975).

*Rundlett v. Oliver*, 607 F.2d 495, 500 (1st Cir. 1979). *Accord, Pollard v. Dwight*, 8 U.S. (4 Cranch) 421, 429, 2 L.Ed. 666 (1808) ("this court would certainly be guided by the construction given by [a] state to its own statute"). However, in this case the Court has had to reach a decision without the benefit of the state court's construction. As it is "[o]bvious [ ] [that] a federal court

must first determine what a state statute means before judging its facial constitutionality", *Casbah, Inc. v. Thone*, 651 F.2d 551, 558 (8th Cir. 1980), *citing Broadrick v. Oklahoma*, 413 U.S. 601, 618, n. 16, 93 S.Ct. 2908, 2919, 37 L.Ed.2d 830 (1973), "it is the duty of this Court to interpret the statute in a manner most reasonably approximating what the Supreme Court of [New Hampshire] would decide if confronted with this issue", *Joseph E. Seagram & Sons v. Conoco, Inc.*, 519 F.Supp. 506, 511 (D.Del.1981) (citations omitted).

This is the approach this Court has taken in attempting to construe the statutory framework concerning children born out of wedlock. In an attempt to prophesize how the state court would construe said framework, there is raised the possibility that the state court could construe N.H. RSA 168–A to legitimate the inheritance rights of children born out of wedlock in addition to the explicit purpose of establishing paternity and support. "Statutes changing the common-law concepts of dower and curtesy, adoption, bastardy, and descent and distribution, . . . have been extended on the basis of a 'statutory common law' " resulting in a "liberal extension of their spirit and purpose" to areas where they "had no express application". Sands, 2A Sutherland Statutory Construction § 54.05, p. 360 (4th Ed. 1973). Such interpretation of Chapter 168–A might lead to a different conclusion as to the constitutionality of N.H. RSA 561:4. *See Lalli v. Lalli, supra*. However, a review of the legislative history and prior decisions of the New Hampshire Supreme Court persuades this Court that the state court would construe the statutory framework as this Court has, had they undertaken the task of doing so.

In scrutinizing N.H. RSA Chapter 168–A, the Court reviewed its predecessor, N.H. RSA Chapter 168, which was repealed in 1971. *See* Revised Laws of New Hampshire Chapter 128 (1942). As shown by the title of said chapter,[3] the plain purpose of the chapter concerned who was chargeable for the maintenance of illegitimate children,

---

**3.** "Maintenance of Bastard Children".

682

thereby alleviating the burden placed on the unwed mother and/or her town. There is no mention or implication that the inheritance rights of the illegitimate children were to be affected.

Further, when the chapter was rewritten by the Legislature, the stated reasons of the House of Representatives for doing so were: "Present law is old, inadequate and mixes criminal and civil actions. This bill does away with criminal concept. Judicial Council studied the problem and recommends approval of this bill." I Journal of the House 844 (1971). The Court notes this statement in no way implicates the rights of illegitimate children to inherit, nor does it mention the statutory framework concerning said right to inherit. Likewise, the discussion of the Senate does not in any way mention the inheritance rights of illegitimate children. II Journal of the Senate 1647–1650 (1971). Thus, one could not look at the legislative history of Chapter 168–A and conclude that one of the purposes was to affect the inheritance rights of children born out of wedlock.

Thus, the only way in which the New Hampshire Supreme Court could conclude that the inheritance rights of said children were affected by Chapter 168–A would be by the method described in the above-quoted material from Sutherland Statutory Construction.[4] This, however, has not been the tendency of the New Hampshire Supreme Court; as that Court's previous decision concerning the predecessor of N.H. RSA 561:4 indicates, the Court has long tended to construe the statute only within the plain meaning of the words used by the Legislature in the statute, *Reynolds v. Hitchcock, supra,* 72 N.H. at 342, 56 A. 745 ("[we] take the language of the statute

itself as our guide in its interpretation").[5] As the New Hampshire Supreme Court stated in *Silva v. Botsch,* 120 N.H. 600, 601, 420 A.2d 301 (1980), "[t]his court ascribes to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise". *See also Chodakowski v. Piper,* 120 N.H. 330, 332, 414 A.2d 1295 (1980) ("[i]n view of this clear language, we need not look further for its meaning"); *Appeal of John Denman,* 120 N.H. 568, 572, 419 A.2d 1084 (1980); N.H. RSA 21:2. This Court concludes that the New Hampshire Supreme Court would have likewise construed this statute only to the extent given it by its plain meaning.

On the basis of the above analysis, it appears reasonable to conclude that the New Hampshire Supreme Court would not give to N.H. RSA Chapter 168–A an expansive meaning far beyond the legislative purpose and language. *See also supra,* p. 12, n. 4.

The Court therefore concludes that its construction of the statutory framework concerning children born out of wedlock is reasonably that which the New Hampshire Supreme Court would reach. Given such construction, the Court finds and rules that N.H. RSA 561:4 is unconstitutional.

■ The Court now turns to the status of the underlying cases before it and finds and rules that the case should be and herewith is remanded to the Secretary for consideration of whether this child is entitled to receive benefits without regard to N.H. RSA 561:4 and for any other proceedings not inconsistent with this Opinion.

SO ORDERED.

4. The Court also notes, as pointed out in the same section of Sands, 2A Sutherland Statutory Construction, p. 362, this method, known as the doctrine of equitable construction,
  has been seen to embody its own limiting principle. '. . . The limitation of the rule (is) that to extend the meaning to any case not included in the words, the case must be shown to come within the same reason upon which the lawmaker proceeded, and not only within a like reason' [*quoting United States*

*v. Freeman,* 44 U.S. (3 How.) 556, 565, 11 L.Ed. 724 (1845)].
(Footnote omitted.)

5. The Court also commented in *Reynolds v. Hitchcock, supra* at 344, 56 A. 745, that concerning its decision in *Goodwin v. Colby,* 64 N.H. 401, 13 A. 866 (1887), "[i]t is only necessary to say that the decision followed the plain letter of the statutes controlling the question."