Hillsborough County Probate Court
No. 86-301

*In re* JASON C.

October 9, 1987

*Law Offices of James J. Bianco, Jr.,* of Concord (*James J. Bianco, Jr.,* and *Eric G. Falkenham* on the brief, and *Mr. Bianco* orally), for the plaintiff, Daniel C.

*Stephen E. Merrill,* attorney general (*Charles T. Putnam,* attorney, on the brief and orally), for the State Division for Children and Youth Services.

SOUTER, J.   This appeal from a decree of the Probate Court for Hillsborough County (*Cloutier,* J.) challenges a ruling of law that two unmarried adults may not jointly petition to adopt a child under RSA chapter 170-B. We affirm.

Daniel and Mary Lou C. were husband and wife in May, 1983, when they became foster parents of Jason C. They were divorced in July 1985, under a decree which recognized that Jason would remain with Mary Lou, but that Daniel would contribute toward the child's support and would have rights of visitation.

The following October, Mary Lou petitioned the probate court to adopt the child, *see* RSA 170-B:12, and soon thereafter Daniel requested the court to treat him as a co-petitioner. Although Mary Lou did not oppose the request, the investigatory report of the division for children and youth services, *see* RSA 170-B:14, indicates that Mary Lou would not agree to Daniel's joinder with her in adopting Jason if Daniel would thereby obtain standing to request physical custody of the child at some time in the future. The division opposed Daniel's request.

In May, 1986, the probate court denied Daniel's request to be treated as a co-petitioner and granted Mary Lou's petition. Daniel moved for reconsideration of each order and requested findings of fact and rulings of law, to which the court responded by deciding, in effect, that RSA chapter 170-B does not authorize a decree that two unmarried adults may jointly adopt another person. Daniel appeals that ruling.

He directs our attention to the statutory categories of adults who may be eligible petitioners for authority to adopt another, one of which is described as "[a]n unmarried adult." RSA 170-B:4, II. Although "adult" is in the singular, Daniel submits that it may be construed to include two unmarried adults, under the provision of RSA 170-B:2, XII that, as terms are used in the adoption statute, the "singular includes the plural . . . when consistent with the intent of the chapter." In attempting to divine that intent, he urges us to remember that the statute was enacted "to facilitate the adoption of children by removing 'arbitrary and broad restrictions' on who could adopt and to enable the courts to respond to the varied circumstances of individual cases." *In re Diana P.,* 120 N.H. 791, 796, 424 A.2d 178, 181 (1980) (citing Bianco, Chamberlain and DeGrandpre, *The New Hampshire Adoption Statute: An Overview,*

18 N.H.B.J. 199, 206 (1977)). Daniel argues that these objectives call for us to hold him eligible to adopt jointly with his former wife, in order to recognize the importance of each of them as a psychological parent to the child.

Despite the statute's admitted objective of removing broad and arbitrary restrictions, we nevertheless conclude that it would not be consistent with legislative intent to construe RSA 170-B:4, II to provide that the probate court may entertain a petition from two unmarried individuals and, in its discretion, approve their joint adoption of another. The reason becomes apparent when we look carefully at the categories of eligible petitioners to adopt. They include two classes of individuals described as unmarried and applying alone: an "unmarried adult," RSA 170-B:4, II; and the "unmarried father or mother of the individual to be adopted." RSA 170-B:4, III. Married applicants must apply jointly with their spouses, however, except under narrowly limited circumstances. A husband or wife may apply alone when the "other spouse is a parent of the individual to be adopted and consents . . . ," RSA 170-B:4, V(a); or when the married applicant and "the other spouse are legally separated," RSA 170-B:4, V(b); or when the "failure of the other spouse to join in the petition is excused by the court by reason of prolonged unexplained absence, unavailability, or circumstances constituting an unreasonable withholding of consent." RSA 170-B:4, V(c).

Applicants who will fall within most, if not all, of these categories share a common characteristic: their domestic circumstances do not threaten to disrupt the living arrangements they will provide for the child to be adopted. Married applicants who apply jointly demonstrate a sense of common purpose. The unmarried applicant who applies alone presents a household with no apparent risk of splitting up. The married applicant who is separated from a spouse by desertion or legal decree may be in the same practical position as someone who is legally single.

We may infer, then, that it was the legislature's intent to confine adoption to applicants who will probably provide a unified and stable household for the child. This objective is not likely to be served by authorizing two unmarried applicants to adopt jointly, as this case illustrates. The applicants do not share living quarters, and if the court were to entertain and grant their joint petition, its next task would presumably be to decide whom the child would live with. That is, it would have to make a custody determination quite separate from the decree of adoption itself. RSA chapter 170-B does not, however, appear to contemplate such a process. The

statute evidently assumes that the adopted child will have one "home," *see* RSA 170-B:14, I, and this assumption apparently explains why the chapter makes no provision for an award of custody except in those instances in which the adoption petition is dismissed. *See* RSA 170-B:15, IV and :16. (RSA 458:17 would provide no jurisdiction in such cases, for that statute simply empowers the superior court to make custody orders in divorce and annulment cases.) This absence of any provision for dealing with possible disputes over custody indicates that the legislature did not intend to authorize adoption in circumstances in which custody disputes would be likely to arise, or indeed could arise, independently of the superior court's domestic relations jurisdiction under RSA chapter 458.

Respect for such intent precludes our reading RSA 170-B:4, II so as to authorize a joint adoption application from two unmarried adults, and we accordingly affirm the decree of the probate court. We intimate no view about the current status of the orders for child support and visitation rendered in the divorce proceeding between Mary Lou and Daniel C.

*Affirmed.*

All concurred.