NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Nashua Probate Division
No. 2017-0482

IN RE Y.L.

Submitted: May 15, 2018
Opinion Issued: July 3, 2018

Valerie C. Raudonis, of Nashua, by brief, for the petitioner.

Gordon J. MacDonald, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the memorandum of law), as amicus curiae.

HICKS, J. We are asked in this case whether, under New Hampshire's adoption statute, see RSA ch. 170-B (2014 & Supp. 2017), the petitioner, J.P., an unmarried male, may become the adoptive father of Y.L., an adult female, without altering the legal parental status of Y.L.'s birth mother — as all three so desire. Contrary to the finding of the Circuit Court (Quigley, J.), we believe that he may and, consequently, we reverse and remand.

As an unmarried adult, J.P. is plainly eligible to adopt under this state's adoption statute. See RSA 170-B:4, II (2014). Equally evident is that, as an adult who assents to the adoption, Y.L. may be adopted. See RSA 170-B:3, I (2014). Basic, also, is that, if the adoption is approved, Y.L. will "be considered the child of [J.P.], entitled to the same rights and privileges and subject to the same duties and obligations as if [she] had been born" to him. RSA 170-B:25, I (2014). And, finally, because the statute contemplates a child having, at most,

two legal parents at any given time, see generally RSA 170-B:25 (2014), it is straightforward that Y.L. may not maintain her legal relationship with both of her birth parents if adopted by J.P.

Not as clear under the adoption statute, though, is whether Y.L. may maintain her legal relationship with one of her birth parents — here, her birth mother — in the adoption at issue. The legal relationship would remain intact automatically if J.P. and Y.L.'s birth mother were married: "[W]hen a child is adopted by a stepparent, the child's relationship to such child's birth parent who is married to the stepparent shall in no way be altered by reason of the adoption." RSA 170-B:25, II. And it could remain intact permissively if J.P. were married to someone else, assuming either J.P. was legally separated, see RSA 170-B:4, IV(b) (2014), or his spouse assented to his adoption of Y.L., see RSA 170-B:4, IV(d) (2014), and both Y.L. and her birth mother agreed to continue their parent-child relationship, see RSA 170-B:25, III, as both do here.[1] See also RSA 170-B:4, IV(c) (2014) (authorizing a married person to adopt without that person's spouse joining as a petitioner where the spouse's failure to join "is excused by the court by reason of prolonged unexplained absence, unavailability, or circumstances constituting an unreasonable withholding of assent"). Nonetheless, the statute does not explicitly tell us whether the relationship survives, or may survive, in a situation such as this — i.e., the adopting parent in an adult adoption is unmarried.

Given the lack of explicit guidance, the Circuit Court looked to the adoption statute's stated purpose, observing that the statute "contemplates that the birth parent or parents '. . . give up the child' so that the adoptive parent or parents are ensured '. . . an undisturbed relationship with the child from and after the date of adoption.'" (Quoting RSA 170-B:1, II, III (2014).) In furtherance of this purpose, the court concluded that Y.L.'s legal relationship to her birth mother, like the one to her birth father, must terminate upon adoption, apparently so as to not impact the newly created parent-child relationship between J.P. and her. The court ruled, therefore, that J.P. may adopt Y.L., but only if he did so "as a single parent who will be the only parent [of Y.L.] after adoption."

The adoption of an adult, however, must be distinguished from the adoption of a minor. In the adoption of a minor, it is necessary to establish an immediate and continuing "undisturbed relationship," RSA 170-B:1, III, between the adoptee and the adoptive parent or parents for the sake of the adoptee's stability in home and everyday life. See In re Jason C., 129 N.H. 762, 764-65 (1987). Hence, the adoption statute requires the parental rights of a minor's birth parent or parents to have been either surrendered or terminated

---

[1] We offer no opinion as to how the adoption statute would apply in this case if Y.L. had two female parents or two male parents, except to note that the current statutory framework appears ill-suited to deal with either situation. See RSA 170-B:25, III; RSA 170-B:27, I (2014).

before an adoption is finalized.  See RSA 170-B:5 (2014); RSA 170-B:7, II, V (2014).

Such a surrender or termination of parental rights is not required, by contrast, in the adoption of an adult.  See RSA 170-B:7, IV (2014).  This is presumably because the adoptee is, after all, an adult, readily capable of managing his or her own relationships to the extent permitted by law. Nowhere in the adoption statute did the legislature evince the intent to vitiate that capability by requiring an adult adoptee to terminate his or her legal relationship with both birth parents, as opposed to only one, in order to effectuate an adoption otherwise authorized by the statute.  Revising that legislative choice by implying the existence of such a prohibition would not only be improper, Appeal of Kadle Props. Revocable Realty Trust, 169 N.H. 728, 732 (2017), but also illogical, as the State, as amicus curiae, points out in its memorandum of law in support of J.P.'s petition, given one of the adoption arrangements explicitly contemplated and permitted by the statute.

That arrangement, discussed above, is the same arrangement agreed to by J.P., Y.L., and Y.L.'s birth mother, albeit with one difference: J.P. would need to be married and either have the assent of, or be legally separated from, his spouse.  See RSA 170-B:4, IV(b), (d); RSA 170-B:25, III; see also RSA 170-B:4, IV(c).  To hold that absence of assent or legal separation from a nonexistent third-party spouse is fatal to the agreed-upon arrangement of the three adults in this case, we believe, would go squarely against "the position of more enlightened courts, that adoption statutes are to be considered liberally, with a view to effectuating the statutory policies." In re Jessica W., 122 N.H. 1052, 1057 (1982) (quotation omitted); cf. In re Jason C., 129 N.H. at 764 (affirming denial of a joint adoption application by two unmarried adults because they did not share the "common characteristic" of individuals eligible to adopt a minor under the statute, which is that "their domestic circumstances do not threaten to disrupt the living arrangements they will provide for the child to be adopted").

We elect, instead, to remain in line with such courts and, accordingly, conclude that the adoption statute authorizes the adoption arrangement contemplated and consented to by J.P., Y.L, and Y.L.'s birth mother.  "Of course, if the legislature disagrees with our construction, it is free to amend the statute as it sees fit." Zorn v. Demetri, 158 N.H. 437, 441 (2009).  The order of the Circuit Court is therefore reversed and the case remanded for proceedings consistent with this opinion.

Reversed and remanded.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

3