HANTZ MARCONI, J.
 

 The petitioners, M.F. and C.N., are unmarried, cohabitating adults who jointly petitioned to adopt M.F.'s minor biological son, J.W. The Circuit Court (
 
 Moran
 
 , J.) ruled that RSA 170-B:4 (2014) does not authorize such an adoption and dismissed the petition.
 
 See
 
 RSA 170-B:4 (governing who may adopt). On appeal, the petitioners argue that the trial court erred because they are eligible to jointly adopt J.W. pursuant to RSA 170-B:4, II and III. We affirm.
 

 The relevant facts follow. M.F. is the biological father of J.W., who was born in 2007. M.F. has been in a relationship with C.N. since approximately 2008. They live together and share two biological children but have never married. J.W. has lived with them since approximately 2011, when M.F. was awarded primary residential responsibility of J.W. The parental rights of J.W.'s birth mother were terminated in 2017.
 

 M.F. and C.N. thereafter filed a joint petition to adopt J.W. They argued that their joint petition is authorized under RSA 170-B:4 because M.F. is "[t]he unmarried parent of the adoptee," RSA 170-B:4, III, and C.N. is "[a]n unmarried adult," RSA 170-B:4, II. The trial court disagreed, relying in part on our decision in
 
 In re Jason C.
 
 ,
 
 129 N.H. 762
 
 ,
 
 533 A.2d 32
 
 (1987).
 
 See
 

 Jason C.
 
 ,
 
 129 N.H. at 765
 
 ,
 
 533 A.2d 32
 
 (holding that a joint adoption application from two unmarried adults was not authorized under RSA 170-B:4, II (1977)). Consequently, the court dismissed the petition and denied the petitioners'
 

 subsequent motion for reconsideration. This appeal followed.
 

 Adoption was unknown to the common law and is wholly statutory; therefore, our review of the law is limited to interpreting the applicable statutes enacted by the legislature.
 
 In re Estate of McQuesten
 
 ,
 
 133 N.H. 420
 
 , 422,
 
 578 A.2d 335
 
 (1990) ;
 
 In re Sky D.
 
 ,
 
 138 N.H. 543
 
 , 545,
 
 643 A.2d 529
 
 (1994). Statutory interpretation is a question of law, which we review
 
 de
 

 novo
 
 .
 
 Petition of Carrier
 
 ,
 
 165 N.H. 719
 
 , 721,
 
 82 A.3d 917
 
 (2013). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole.
 
 In re Baby Girl P.
 
 ,
 
 147 N.H. 772
 
 , 775,
 
 802 A.2d 1192
 
 (2002). We focus on the words of the statute because they are the touchstone of the legislature's intent.
 
 Doggett v. Town of North Hampton
 
 ,
 
 138 N.H. 744
 
 , 745,
 
 645 A.2d 673
 
 (1994). We give effect to every word of a statute whenever possible,
 
 Marcotte v. Timberlane/Hampstead School Dist.
 
 ,
 
 143 N.H. 331
 
 , 339,
 
 733 A.2d 394
 
 (1999), and we presume that the legislature did not enact superfluous or redundant words,
 
 Winnacunnet Coop. Sch. Dist. v. Town of Seabrook
 
 ,
 
 148 N.H. 519
 
 , 525-26,
 
 809 A.2d 1270
 
 (2002). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.
 
 Carrier
 
 ,
 
 165 N.H. at 721
 
 ,
 
 82 A.3d 917
 
 .
 

 We turn first to the language of the relevant statute. RSA 170-B:4 lists categories of individuals who are eligible to adopt.
 
 Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 ;
 
 see
 
 RSA 170-B:4. The statute provides:
 

 Any of the following adults may adopt:
 

 I. Husband and wife together.
 

 II. An unmarried adult.
 

 III. The unmarried parent of the adoptee.
 

 IV. A married person without that person's spouse joining as a petitioner, if the adoptee is not the petitioner's spouse; and if any one of the following circumstances apply:
 

 (a) The petitioner's spouse is a parent of the adoptee and assents to the adoption;
 

 (b) The petitioner and his or her spouse are legally separated;
 

 (c) The failure of the petitioner's spouse to join in the petition is excused by the court by reason of prolonged unexplained absence, unavailability, or circumstances constituting an unreasonable withholding of assent; or
 

 (d) The petitioner's spouse assents to the adoption and the adoptee is over the age of 18.
 

 RSA 170-B:4. The petitioners' contention that they are eligible to jointly adopt J.W. is premised on their argument that the statute authorizes the joint adoption of a minor child by an unmarried parent of the child and an unrelated, unmarried adult.
 
 See
 
 RSA 170-B:4, II, III.
 

 A brief overview of the statute gives context to our determinations below. RSA chapter 170-B, including RSA 170-B:4, was first enacted in 1973,
 
 see
 
 Laws 1973, 266:1, as part of legislation proposed by the Governor's Commission on Laws Affecting Children.
 
 See
 

 In re Adoption of Baby C.
 
 ,
 
 125 N.H. 216
 
 , 221,
 
 480 A.2d 101
 
 (1984) ; James J. Bianco, Jr., Michael R. Chamberlain & Charles A. DeGrandpre,
 
 The New Hampshire Adoption Statute: An Overview
 
 , 18 N.H.B.J. 199, 199-201 (1977). Although RSA 170-B:4 has been amended several times since 1973, the language of paragraphs I and II has not changed, the language of paragraph III has not materially changed, and the statute's overall
 structure has remained the same.
 
 See
 
 Laws 1973, 266:1; Laws 1987, 343:3; Laws 1996, 46:2; Laws 1999, 18:2, 76:1; Laws 2004, 255:1. Therefore, our decision in
 
 Jason C.
 
 is instructive in construing the current version of RSA 170-B:4.
 
 See
 

 Jason C.
 
 ,
 
 129 N.H. at 763-65
 
 ,
 
 533 A.2d 32
 
 ;
 
 cf
 
 .
 
 Anderson v. Estate of Wood
 
 ,
 
 171 N.H. 524
 
 , 529,
 
 198 A.3d 926
 
 (2018) (describing presumptions we apply when the legislature amends a statute after we have construed it).
 

 In
 
 Jason C.
 
 , which required us to interpret paragraph II of RSA 170-B:4, "we look[ed] carefully at the categories of eligible petitioners to adopt" listed in the statute.
 
 Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 . We observed that these categories "include two classes of individuals described as unmarried and
 
 applying alone
 
 : an 'unmarried adult,' RSA 170-B:4, II [ (1977) ]; and the 'unmarried father or mother of the individual to be adopted.' RSA 170-B:4, III [ (1977) ]."
 
 [1]
 

 Id
 

 .
 
 (emphasis added). The other paragraphs of the statute make clear that "[m]arried applicants must apply jointly with their spouses, ... except under narrowly limited circumstances" that are listed in the last paragraph of the statute.
 

 Id
 

 .
 
 ;
 
 see
 
 RSA 170-B:4, IV. We concluded that, in using the language "[a]n unmarried adult," the legislature did not intend to authorize two unmarried adults to adopt jointly under paragraph II.
 
 Jason C.
 
 ,
 
 129 N.H. at 763-64
 
 ,
 
 533 A.2d 32
 
 (quotation omitted). We held that "[r]espect for such [legislative] intent precludes our reading RSA 170-B:4, II so as to authorize a joint adoption application from two unmarried adults."
 
 Id
 
 . at 765,
 
 533 A.2d 32
 
 ;
 
 cf
 
 .
 
 Anderson v. Executive Dir., N.H. Retirement Sys.
 
 ,
 
 166 N.H. 752
 
 , 754,
 
 103 A.3d 1181
 
 (2014) ("[T]he legislature has provided that in construing all statutes, '[w]ords importing the singular number may extend and be applied to several persons or things,' RSA 21:3 (2012), '
 
 unless
 
 such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute,' RSA 21:1 (2012)." (emphasis added)).
 

 The petitioners contend that
 
 Jason C.
 
 is distinguishable. They argue, in part, that
 
 Jason C.
 
 addressed only whether two unmarried adults could jointly adopt pursuant to paragraph II, whereas they are seeking to jointly adopt pursuant to paragraphs II and III. The petitioners focus on paragraph III, asserting that this paragraph is "intended to permit the unmarried parent of a child to adopt the child
 
 jointly
 
 with another individual." (Emphasis added.) They reason that paragraph III must be so construed because, otherwise, it "would amount to mere surplusage, as an unmarried parent of the child, in possession of full parental rights, would have no need or reason to pursue adoption." In other words, the petitioners assume that an unmarried parent would have no reason to seek adoption of his or her child as a sole petitioner, and thus the legislature's intent in including paragraph III was to facilitate a joint adoption by the unmarried parent and another individual. We disagree.
 

 We first note that paragraph III of the statute, like paragraph II, is phrased in the singular.
 
 See
 
 RSA 170-B:4, III ("The unmarried
 
 parent
 
 of the adoptee." (emphasis added)). Thus, in
 
 Jason C.
 
 , we described an individual seeking to adopt under paragraph III as "applying alone."
 
 Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 . Although that case did not involve the application of RSA 170-B:4, III, both
 
 Jason C.
 
 and the plain language of paragraph III support the conclusion that the
 legislature intended to allow the unmarried parent of the adoptee to pursue the adoption as a sole petitioner.
 
 See
 

 id
 

 .
 
 ; RSA 170-B:4, III.
 

 We find further support for this conclusion in the 1971 version of the Uniform Adoption Act (UAA), from which the language of RSA 170-B:4 originates.
 
 See
 
 Unif. Adoption Act § 3 (amended 1971), 9 Part IA U.L.A. 143 (1999); Bianco, Chamberlain & DeGrandpre,
 
 supra
 
 at 201 (stating that the Governor's Commission on Laws Affecting Children used the UAA "as its basic underlying document" in drafting the 1973 legislation that created RSA chapter 170-B). When RSA 170-B:4 was first enacted in 1973, the language of paragraph III was identical to the language of section 3(3) of the UAA.
 
 Compare
 
 RSA 170-B:4, III (1977),
 
 with
 
 Unif. Adoption Act § 3(3) (amended 1971), 9 Part IA U.L.A. 143. The official comment to section 3 states, in relevant part, that the UAA "permits any unmarried father or mother to adopt his [or her] own child." Unif. Adoption Act § 3 cmt. (amended 1971), 9 Part IA U.L.A. 144;
 
 see
 

 In the Matter of Ball & Ball
 
 ,
 
 168 N.H. 133
 
 , 137,
 
 123 A.3d 719
 
 (2015) (stating that we rely upon the official comments to a uniform act in interpreting that act). Likewise, courts from other jurisdictions have recognized that section 3 of the UAA expressly permits an unmarried parent to adopt his or her own child.
 
 See, e.g.
 
 ,
 
 In re J.H.
 
 ,
 
 313 A.2d 874
 
 , 875 n.3 (D.C. 1974) ;
 
 Bridges v. Nicely
 
 ,
 
 304 Md. 1
 
 ,
 
 497 A.2d 142
 
 , 145 (1985) ;
 
 Adoption of Adult by G.V.C.
 
 ,
 
 243 N.J.Super. 651
 
 ,
 
 581 A.2d 123
 
 , 125 (N.J. Super. Ct. Ch. Div. 1990).
 

 In addition, Arkansas has construed the language of its own provision, which is modeled after the UAA,
 
 see
 

 Ark. Code Ann. § 9-9-204
 
 (West, Westlaw through July 1, 2019); H. Keith Morrison & Patricia A. Sievers,
 
 Adoption Law in Arkansas
 
 ,
 
 53 Ark. L. Rev. 1
 
 , 2 n.3 (2000), as "clearly allow[ing] for an unmarried father to adopt his own child,"
 
 King v. Ochoa
 
 ,
 
 373 Ark. 600
 
 ,
 
 285 S.W.3d 602
 
 , 604 (2008), and an unmarried mother to adopt her own child,
 
 In re Adoption of M.K.C.
 
 ,
 
 373 Ark. 603
 
 ,
 
 285 S.W.3d 605
 
 , 606 (2008). We similarly construe the plain language of RSA 170-B:4, III to allow an unmarried parent who is eighteen years of age or older to adopt his or her own child.
 
 See
 
 RSA 170-B:4 (providing that only "adults" may adopt); RSA 170-B:2, I (2014) (defining "[a]dult" as "an individual who is not a minor"); RSA 170-B:2, XI (2014) (defining "[m]inor" as "any individual under the age of 18").
 

 In arguing for a different interpretation of RSA 170-B:4, the petitioners question why an unmarried parent would have any "need or reason" to adopt his or her own child. One reason becomes apparent when the statute is considered in the historical context within which it was originally enacted. RSA 170-B:4, III enables an unmarried parent of a child born out of wedlock to "formalize [his or her] relationship with the child through adoption." Bianco, Chamberlain & DeGrandpre,
 
 supra
 
 at 207. When RSA chapter 170-B was first enacted, New Hampshire law treated a child born out of wedlock differently from a "legitimate" child in certain respects.
 
 See, e.g.
 
 ,
 
 Robin C. v. Schweiker
 
 ,
 
 532 F. Supp. 677
 
 , 679 (D.N.H. 1982). For example, a child born out of wedlock whose parents died intestate could "only inherit from the mother and her kindred, not from the father (or his kindred)."
 

 Id
 

 .
 
 ;
 
 see
 
 RSA 561:4 (1974) (amended 1983). There were few methods by which a child could be legitimated under New Hampshire law prior to 1973.
 
 See, e.g.
 
 ,
 
 Robin C.
 
 ,
 
 532 F. Supp. at 679
 
 (discussing methods).
 
 [2]
 
 The provisions
 of RSA chapter 170-B thus provided another mechanism through which an unmarried natural parent could legitimate his or her child born out of wedlock, making that child "entitled to the same rights and privileges and subject to the same duties and obligations as if [the child] had been born in wedlock to the adopting parent ...." RSA 170-B:20, I (1977) (current version, as amended by Laws 2004, 255:1, codified at RSA 170-B:25, I (2014));
 
 see
 

 In re Jessica W.
 
 ,
 
 122 N.H. 1052
 
 , 1056-57,
 
 453 A.2d 1297
 
 (1982) (holding that RSA 170-B:20 (1977) did not require severance of the natural mother's parental rights and responsibilities when the "natural father adopts in order to legitimize [their] child").
 

 Therefore, we observe that legitimation of a child born out of wedlock is one reason why an unmarried parent might seek to adopt his or her child pursuant to RSA 170-B:4, III. Accordingly, we reject the petitioners' argument that this paragraph
 
 must
 
 be intended to permit an unmarried parent to adopt jointly with another individual, as this argument is premised on the assumption that an unmarried parent "would have no need or reason to pursue adoption" of his or her own child as a sole petitioner.
 
 [3]
 

 Additionally, the petitioners have not persuaded us that the legislature intended to allow an unmarried parent and an unmarried, unrelated adult to jointly adopt the minor child of the unmarried parent. Indeed, the petitioners' construction of RSA 170-B:4 would lead to results that the legislature clearly did not intend. As we observed in
 
 Jason C.
 
 , RSA chapter 170-B "assumes that the adopted child will have one home."
 
 Jason C.
 
 ,
 
 129 N.H. at 765
 
 ,
 
 533 A.2d 32
 
 (quotation omitted);
 
 see, e.g.
 
 , RSA 170-B:18 (Supp. 2018) (repeatedly referring to the adoptive "home" in the singular). We concluded, based on the plain language of RSA 170-B:4, that "it was the legislature's intent to confine adoption to applicants who will probably provide a unified and stable household for the child."
 
 Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 . If we agreed with the petitioners' construction, however,
 
 any
 
 "unmarried adult" would be eligible to jointly adopt with "[t]he unmarried parent of the adoptee," RSA 170-B:4, II, III, regardless of the relationship between the two petitioners, because the plain language of the statute does not impose any requirements regarding the nature of that relationship, such as whether they must cohabitate,
 
 see
 
 RSA 170-B:4. Thus, the petitioners' construction of RSA 170-B:4 is inconsistent with the legislature's intent to confine adoption to categories of individuals whom the legislature has determined "will probably provide a unified and stable household for the child."
 
 Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 ;
 
 see
 

 Langevin v. Travco Ins. Co.
 
 ,
 
 170 N.H. 660
 
 , 668,
 
 184 A.3d 80
 
 (2018) (declining to construe statutory provision in a manner that would be inconsistent with the legislature's intent as expressed in that statute as a whole).
 

 The petitioners also attempt to distinguish
 
 Jason C.
 
 by arguing that the concern
 about "stability" expressed in that case is not present here because they have a "stable household." They point out that
 
 Jason C.
 
 involved a divorced couple seeking to jointly adopt the foster child who lived with the couple before the marriage ended,
 
 see
 

 Jason C.
 
 ,
 
 129 N.H. at 763
 
 ,
 
 533 A.2d 32
 
 , whereas M.F. and C.N. live together, share two biological children, and are seeking to adopt M.F.'s son, who has been a member of their joint household since 2011. The dissent would similarly "limit
 
 In re Jason C.
 
 to its facts."
 

 Our observations in
 
 Jason C.
 
 , however, were made in the context of discerning legislative intent from the plain language of the statute we were interpreting.
 
 See
 

 id
 
 . at 764,
 
 533 A.2d 32
 
 . That statute, RSA 170-B:4, does
 
 not
 
 allow a court to determine eligibility to adopt by assessing whether the specific facts underlying the petition to adopt indicate the existence of a stable household. Instead, the New Hampshire Legislature has determined that certain categories of petitioners "will probably provide a unified and stable household for the child" to be adopted,
 
 ibr.US_Case_Law.Schema.Case_Body:v1">id
 

 .,
 
 and it has chosen to confine adoption to those categories of individuals,
 
 see
 
 RSA 170-B:4.
 

 "[P]olicy determinations as to what [eligibility] limitations apply are for the legislature, not the judiciary, to make."
 
 In re Adoption of Baby Z.
 
 ,
 
 247 Conn. 474
 
 ,
 
 724 A.2d 1035
 
 , 1060 (Conn. 1999) (emphasis omitted);
 
 see
 

 Dolbeare v. City of Laconia
 
 ,
 
 168 N.H. 52
 
 , 57,
 
 120 A.3d 146
 
 (2015) (noting that "matters of public policy are reserved for the legislature"). Therefore, although we recognize that the modern family has taken on many different forms, it is the legislature's prerogative - subject to constitutional limitations - to limit eligibility to adopt to those categories of individuals that it believes are most likely to "provide a unified and stable household for the child" to be adopted.
 
 Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 ;
 
 see
 

 Baby Z.
 
 ,
 
 724 A.2d at
 
 1060 ;
 
 Adoption of T.K.J.
 
 ,
 
 931 P.2d 488
 
 , 496 (Colo. App. 1996) (holding that the legislature "may reasonably have determined that the best interests of children and the interests of familial stability would be promoted by limiting adoptions to situations in which: (1) the parents are completely divested of their parental rights and duties or (2) the adopting party is married to the custodial parent"). It is not our role to inquire into the wisdom or desirability of the legislature's choice.
 
 See
 

 Blackthorne Group v. Pines of Newmarket
 
 ,
 
 150 N.H. 804
 
 , 810,
 
 848 A.2d 725
 
 (2004). Rather, the question of "whether this legislative decision [to limit adoption] is or is not in keeping with the changing social mores of the public at large is the role of the democratic process and not of the courts."
 
 T.K.J.
 
 ,
 
 931 P.2d at 496
 
 . Thus, if the legislature determines that eligibility to adopt should be expanded, it is free to amend the statutory scheme.
 
 See
 

 Appeal of New England Police Benevolent Ass'n
 
 ,
 
 171 N.H. 490
 
 , 497,
 
 198 A.3d 905
 
 (2018).
 

 Finally, the petitioners raise concerns about the implications that, in their view, could arise from our construction of RSA 170-B:4, II and III. We note the scope of our decision in this case. We hold that, as currently written, RSA 170-B:4 does not authorize the joint adoption of a minor child by the unmarried parent of that child and an unmarried, unrelated adult. The petitioners do not assert that C.N. qualifies as J.W.'s "parent" or "stepparent" for purposes of RSA chapter 170-B. Nor are we presented with the issue raised in many of the out-of-state cases relied upon by the petitioners, in which the court considered whether to construe the jurisdiction's adoption statutes so as to permit the same-sex partner of the child's biological parent to adopt the child, without severing the biological parent's parental
 rights, at a time when the jurisdiction did not recognize same-sex marriage.
 
 [4]
 

 See, e.g.
 
 ,
 
 Petition of K.M.
 
 ,
 
 274 Ill.App.3d 189
 
 ,
 
 210 Ill.Dec. 693
 
 ,
 
 653 N.E.2d 888
 
 , 890, 898-99 (1995) ;
 
 In re Adoption of K.S.P.
 
 ,
 
 804 N.E.2d 1253
 
 , 1254, 1256-57, 1260 (Ind. Ct. App. 2004) ;
 
 Adoption of Tammy
 
 ,
 
 416 Mass. 205
 
 ,
 
 619 N.E.2d 315
 
 , 316, 318, 321 (1993) ;
 
 Adoption of B.L.V.B.
 
 ,
 
 160 Vt. 368
 
 ,
 
 628 A.2d 1271
 
 , 1272, 1276 (1993) ; Mark Kleinman & Katelyn D. Wicks, eds.,
 
 Legal Recognition of Same-Sex Relationships
 
 ,
 
 13 Geo. J. Gender & L. 365
 
 , 373-74, 398, 405, 413 (2012). We note that marriage is legally available to M.F. and C.N., and there is no dispute that C.N. would be eligible to adopt J.W. as a stepparent if she and M.F. married.
 
 See
 
 RSA 170-B:4, IV(a); RSA 170-B:25, II (2014);
 
 see also
 

 In re Y.L.
 
 ,
 
 171 N.H. 99
 
 , 100-01,
 
 190 A.3d 1049
 
 (2018) (explaining that the legal relationship between the adoptee and her birth mother "would remain intact automatically" if the petitioner was married to the adoptee's birth mother (citing RSA 170-B:25, II)). Because they are not married, however, the petitioners are not eligible to jointly adopt J.W.
 

 While we conclude that the petitioners' remaining arguments do not warrant further discussion,
 
 see
 

 Vogel v. Vogel
 
 ,
 
 137 N.H. 321
 
 , 322,
 
 627 A.2d 595
 
 (1993), we turn to some of the points raised by our dissenting colleagues and by the State as
 
 amicus
 

 curiae
 
 .
 

 Both the dissent and the State emphasize our previous observation that "the position of more enlightened courts ... [is] that adoption statutes are to be considered liberally, with a view to effectuating the statutory policies."
 
 Y.L.
 
 ,
 
 171 N.H. at 102
 
 ,
 
 190 A.3d 1049
 
 (quotation omitted);
 
 accord
 

 Jessica W.
 
 ,
 
 122 N.H. at 1057
 
 ,
 
 453 A.2d 1297
 
 ;
 
 Smith v. Consul General Of Spain
 
 ,
 
 110 N.H. 62
 
 , 64,
 
 260 A.2d 95
 
 (1969). A court's power to liberally construe a statute, however, extends only to the degree that the statutory language reasonably allows.
 
 N.H. Motor Transport Assoc. Employee Benefit Trust v. N.H. Ins. Guaranty Assoc.
 
 ,
 
 154 N.H. 618
 
 , 623,
 
 914 A.2d 812
 
 (2006). "[L]iberal construction does not permit a court to rewrite the statute."
 
 T.K.J.
 
 ,
 
 931 P.2d at
 
 492 ;
 
 accord
 

 Appeal of Town of Lincoln
 
 , 172 N.H. ----, ----,
 
 211 A.3d 1184
 
 ,
 
 2019 WL 2402232
 
 (decided June 7, 2019) (slip op. at 8) ;
 
 see also
 

 In Interest of Angel Lace M.
 
 ,
 
 184 Wis.2d 492
 
 ,
 
 516 N.W.2d 678
 
 , 687 (1994) (Geske, J., concurring) (noting that the court is "still bound by the statutory requirements for adoption" despite liberal construction provision). In our view, the dissent's reading of RSA chapter 170-B goes beyond liberal construction and effectively rewrites the statutory scheme to allow an adoption arrangement that the legislature did not authorize.
 

 For example, the dissent essentially takes the position that the circuit court can dispense with statutory requirements for adoption as long as the court determines that the proposed adoption would be consistent with the policy objectives of the statutory scheme.
 
 See
 
 RSA 170-B:1 (2014) (identifying the purposes of RSA chapter 170-B);
 
 Jessica W.
 
 ,
 
 122 N.H. at 1057
 
 ,
 
 453 A.2d 1297
 
 (stating that the policies underlying adoption statutes in general "include promoting the best interests of children while at the same time protecting as far as possible the interests of both natural and adoptive parents" (quotation omitted)). We agree with the State, however, that the circuit court cannot grant a petition to adopt unless the
 statutory requirements for adoption are met.
 
 See
 
 RSA 170-B:19, VI (2014);
 
 Baby Girl P.
 
 ,
 
 147 N.H. at 775
 
 ,
 
 802 A.2d 1192
 
 ;
 
 see also, e.g.
 
 ,
 
 T.K.J.
 
 ,
 
 931 P.2d at 491
 
 (noting that "if a proposed adoption fails to conform to statutory requirements, the effort to adopt must fail");
 
 In re Adoption of Luke
 
 ,
 
 263 Neb. 365
 
 ,
 
 640 N.W.2d 374
 
 , 378 (2002) (
 
 per
 

 curiam
 
 ) ("The absence of any one of the necessary [statutory requirements] will preclude the adoption.");
 
 In re Adoption of Huitzil
 
 ,
 
 29 Ohio App.3d 222
 
 ,
 
 504 N.E.2d 1173
 
 , 1175 (1985) (
 
 per
 

 curiam
 
 ) ("[I]f the requirements of an applicable statute are not met, no adoption is possible.").
 

 One of the statutory requirements for adoption concerns the consent of the natural parents.
 
 See
 
 RSA 170-B:5 (2014);
 
 see also
 

 Durivage v. Vincent
 
 ,
 
 102 N.H. 481
 
 , 483,
 
 161 A.2d 175
 
 (1960). In "the usual case of adoption,"
 
 Jessica W.
 
 ,
 
 122 N.H. at 1055
 
 ,
 
 453 A.2d 1297
 
 , the adoptee "receives two new parents, and both of the natural parents, together with their extended families, are substituted out,"
 
 Preston v. Mercieri
 
 ,
 
 133 N.H. 36
 
 , 45,
 
 573 A.2d 128
 
 (1990). Therefore, subject to certain exceptions created by the legislature, a parent who consents to the adoption of his or her child is, in effect, consenting to the termination of his or her legal relationship with that child.
 
 See
 
 RSA 170-B:11, I (2014); RSA 170-B:25 (2014).
 

 Generally speaking, consent to a proposed adoption must be obtained from the birth mother, the legal father, and, in certain circumstances, the birth father.
 
 Baby Girl P.
 
 ,
 
 147 N.H. at 775
 
 ,
 
 802 A.2d 1192
 
 ; RSA 170-B:5, I. Except in cases of stepparent adoption, the consent of the persons listed in RSA 170-B:5, I, takes the form of a surrender of parental rights executed in accordance with the statutory requirements.
 
 See
 
 RSA 170-B:9, :10 (2014). Consent is not required, however, from persons who fall within one of the categories listed in RSA 170-B:7 (2014); for example, a person whose parental rights to the proposed adoptee have already been terminated by court order.
 
 See
 
 RSA 170-B:7, II, V, VI.
 

 In cases where a stepparent seeks to adopt the child of his or her spouse, the parent married to the adopting stepparent must assent to the adoption,
 
 see
 
 RSA 170-B:4, IV(a), but need not execute a surrender of parental rights because that parent's legal relationship with the child will remain intact after the adoption,
 
 see
 
 RSA 170-B:25, II;
 
 Jessica W.
 
 ,
 
 122 N.H. at 1056
 
 ,
 
 453 A.2d 1297
 
 ;
 
 Preston
 
 ,
 
 133 N.H. at 45
 
 ,
 
 573 A.2d 128
 
 . The legislature has thus created a "stepparent exception" to the general rule that adoption severs the adoptee's legal relationship with both natural parents.
 
 See
 
 RSA 170-B:25, II;
 
 Jessica W.
 
 ,
 
 122 N.H. at 1056
 
 ,
 
 453 A.2d 1297
 
 ;
 
 McQuesten
 
 ,
 
 133 N.H. at 422-23
 
 ,
 
 578 A.2d 335
 
 .
 

 The legislature created a second exception to this general rule in RSA 170-B:25, III. In
 
 Y.L.
 
 , we held that, pursuant to this exception, an adult female could be adopted by an unmarried adult male without severing her legal relationship with her birth mother.
 
 See
 

 Y.L.
 
 ,
 
 171 N.H. at 100-02
 
 ,
 
 190 A.3d 1049
 
 . "The adoption of an adult, however, must be distinguished from the adoption of a minor,"
 
 id
 
 . at 101,
 
 190 A.3d 1049
 
 , and the statutory scheme reflects those distinctions by treating adult adoptions differently,
 
 see, e.g.
 
 , RSA 170-B:7, IV; RSA 170-B:19, III, IV (2014). Thus, we disagree with the dissent that the question posed in
 
 Y.L.
 
 , which involved an adult adoption, is similar to the issue in this case involving the proposed adoption of a minor.
 

 The State correctly notes that the legislature has only created two exceptions to the general rule that adoption severs the
 adoptee's legal relationship with both natural parents.
 
 See
 
 RSA 170-B:25, II, III. To the extent the dissent relies upon the stepparent exception, we disagree that this exception applies here. As noted above, C.N. is not married to J.W.'s parent, nor do the petitioners even argue that C.N. qualifies as J.W.'s "stepparent" for purposes of RSA chapter 170-B. Furthermore, as the State acknowledges, this case is factually distinguishable from
 
 Jessica W.
 
 , where we liberally construed the stepparent exception to permit the birth mother of the child to retain her parental rights where the unmarried natural father adopted in order to legitimate their child.
 
 Jessica W.
 
 ,
 
 122 N.H. at 1055-57
 
 ,
 
 453 A.2d 1297
 
 . As we have explained above, the legislature intended to allow unmarried parents to legitimate their children through the adoption process.
 
 See
 
 Bianco, Chamberlain & DeGrandpre,
 
 supra
 
 at 207. Thus, liberally construing the stepparent exception to cover this situation effectuates the legislature's intent.
 
 See
 

 Baby Z.
 
 ,
 
 724 A.2d at 1061
 
 (explaining that "the statute at issue is construed liberally in order to effectuate the intent of the legislature" (emphasis omitted)). By contrast, applying the stepparent exception in this case would effectively revise the legislature's choice to limit adoptions in the manner we have already discussed. Respect for legislative intent precludes us from doing so.
 
 See
 

 Jason C.
 
 ,
 
 129 N.H. at 765
 
 ,
 
 533 A.2d 32
 
 .
 

 We conclude that, because neither exception applies, under the current statutory scheme, C.N. - an unmarried, unrelated adult - cannot adopt M.F.'s minor child unless M.F. surrenders his parental rights to the child.
 
 See
 
 RSA 170-B:5, I; RSA 170-B:16, III (2014); RSA 170-B:19, IV. Because M.F. has not surrendered his parental rights to J.W. (and does not intend to), the statutory requirements for adoption are not met.
 
 See
 
 RSA 170-B:19, IV, VI. When the statutory requirements are not met, the court does not reach the merits of the adoption petition.
 
 See
 

 Angel Lace M.
 
 ,
 
 516 N.W.2d at 681
 
 (explaining that the court must determine whether the proposed adoption satisfies the statutory requirements for adoption before it reaches the best interest inquiry).
 

 The dissent posits that the proposed adoption arrangement can be achieved in this case because it reads RSA 170-B:19, IV as providing the circuit court with "discretion to authorize C.N.'s adoption of J.W. and excuse the surrender of M.F.'s parental rights because doing so would be in J.W.'s best interest."
 
 See
 
 RSA 170-B:19, IV (stating court may grant petition to adopt a minor child if it determines,
 
 inter
 

 alia
 
 , "that the required surrenders have been obtained or excused
 
 and
 
 that the adoption is in the best interest of the adoptee" (emphasis added)). In effect, the dissent construes RSA 170-B:19, IV as allowing the court, in its discretion, to "excuse" the effect of RSA 170-B:25, which severs the legal relationship between the adoptee and his or her birth parents except in limited circumstances that are not present here.
 

 We are generally reluctant to address issues that the parties have neither raised nor briefed.
 
 See
 

 LaChance v. U.S. Smokeless Tobacco Co.
 
 ,
 
 156 N.H. 88
 
 , 91,
 
 931 A.2d 571
 
 (2007) ;
 
 see also
 

 Hodges v. Johnson
 
 ,
 
 170 N.H. 470
 
 , 490,
 
 177 A.3d 86
 
 (2017) (Bassett, J., dissenting) ("Deciding issues that have not been briefed undermines our adversary process and increases the possibility that we will err."). Nonetheless, we disagree that RSA 170-B:19, IV allows C.N. to adopt J.W. without affecting J.W.'s legal relationship to M.F. The court's excusal of a parent's required surrender does not mean that the parent's rights are unaffected by the adoption; it merely means that the adoption petition
 can be heard by the court.
 
 See
 
 RSA 170-B:19, IV, VI. Notably, the court's excusal of the surrender does
 
 not
 
 change the legal effect of the adoption decree under RSA 170-B:25. Subject to the two exceptions described above, the adoption decree severs the legal relationship between the adoptee and his or her birth parents.
 
 See
 
 RSA 170-B:25 ;
 
 Y.L.
 
 ,
 
 171 N.H. at 100-02
 
 ,
 
 190 A.3d 1049
 
 . As we have explained, neither exception applies here; therefore, the dissent's reliance on RSA 170-B:19, IV is misplaced.
 

 We reiterate that legislative intent is the touchstone of our inquiry in matters of statutory interpretation, including the interpretation of adoption statutes.
 
 See
 

 Y.L.
 
 ,
 
 171 N.H. at 101-02
 
 ,
 
 190 A.3d 1049
 
 (examining the legislature's intent and construing the relevant adoption statutes consistent with this intent);
 
 Jason C.
 
 ,
 
 129 N.H. at 764-65
 
 ,
 
 533 A.2d 32
 
 (construing adoption statute in accordance with the legislature's intent). Therefore, although the petitioners "have presented a factual record that may warrant sympathetic consideration of their adoption [petition]," this cannot transcend the limits the legislature has placed on adoption.
 
 Baby Z.
 
 ,
 
 724 A.2d at
 
 1060 ;
 
 see
 

 In re Guardianship of Eaton
 
 ,
 
 163 N.H. 386
 
 , 393,
 
 42 A.3d 799
 
 (2012). We note that the legislature has been willing to reexamine the adoption statutes on a number of occasions to address asserted shortcomings.
 
 See, e.g.
 
 , Laws 1999, 76:1 (amending RSA 170-B:4 to allow a married petitioner to adopt another adult with the consent of the petitioner's spouse); Laws 2006, 200:6, :10, :11 (amending RSA 170-B:11 and RSA 170-B:25 to address inheritance rights in a situation where the adoptee dies before the final decree of adoption is issued). In other words, "our legislators [have] continue[d] to work to advance the interests and protection of our children by listening to their constituents, reviewing our current laws, and debating the wisdom of statutory changes."
 
 Angel Lace M.
 
 ,
 
 516 N.W.2d at 687
 
 (Geske, J., concurring). We are confident that the legislature will carefully consider the policy concerns raised by the petitioners and relied on by the dissent if the legislature deems them to be meritorious.
 

 Affirmed.
 

 LYNN, C.J., and DONOVAN, J., concurred; HICKS and BASSETT, JJ., dissented.
 

 The language of paragraph III was changed to "[t]he unmarried parent of the adoptee" when RSA chapter 170-B was repealed and reenacted in 2004. Laws 2004, 255:1.
 

 Robin C.
 
 discussed RSA 460:29 (2018), which permits a " 'putative father of any child born out of wedlock' " to "bring[ ] a legitimation petition in [superior] court."
 
 Robin C.
 
 ,
 
 532 F. Supp. at 679
 
 (emphasis omitted) (quoting RSA 460:29, I). RSA 460:29 was not enacted until 1977,
 
 see
 
 Laws 1977, 205:1, and thus was not in effect when RSA chapter 170-B was enacted in 1973,
 
 see
 
 Laws 1973, 266:1.
 

 While the dissent seems to fault us, as well as the petitioners themselves, for focusing upon the fact that they brought the adoption petition jointly, we treat the petitioners as joint petitioners because that is what they ask us to do. Indeed, their statutory construction arguments are premised upon the joint nature of their petition.
 
 See
 

 Deere & Co. v. State of N.H.
 
 ,
 
 168 N.H. 460
 
 , 470,
 
 130 A.3d 1197
 
 (2015) (noting that "[w]e confine our analysis to the questions raised on appeal").
 

 Same-sex marriage became legal in New Hampshire in 2010. Laws 2009, 59:1, :10;
 
 In re Guardianship of Madelyn B.
 
 ,
 
 166 N.H. 453
 
 , 455,
 
 98 A.3d 494
 
 (2014) ;
 
 see
 
 RSA 457:1-a (2018).