HICKS and BASSETT, JJ., dissenting.
 

 Because we would interpret our adoption statutes to allow the contemplated adoption in this case to take place, we respectfully dissent. Like the State, we believe "that a liberal construction of the adoption statute" allows petitioner C.N. to adopt J.W., the minor son of her domestic partner, petitioner M.F., "without requiring [M.F.] to surrender his parental rights over J.W., so long as both [M.F.] and C.N. consent to the adoption arrangement and the trial court finds that the adoption is in J.W.'s best interests."
 

 The petitioners are unmarried, domestic partners and, together, are the biological parents of two children. M.F. and C.N. have been together since approximately 2008. M.F. is also the biological father of J.W., a minor, who was born in December 2007.
 
 See
 
 RSA 170-B:2, XI (2014) (defining a "minor" for the purposes of adoption law as an individual "under the age of 18"). In addition, M.F. is J.W.'s legal father, having been named on J.W.'s birth certificate.
 
 See
 
 RSA 170-B:2, X(a) (2014). The parental rights of J.W.'s biological mother were terminated in 2017. J.W. has resided with M.F. and C.N. since approximately 2011.
 

 In 2018, the petitioners jointly filed a petition to adopt J.W. Their petition was jointly filed, even though M.F. has, in his
 attorney's words, "full parental rights" with respect to J.W. C.N. petitioned under RSA 170-B:4, II, which allows "[a]n unmarried adult" to adopt. RSA 170-B:4, II (2014). M.F. purported to do so pursuant to RSA 170-B:4, III, which allows "[t]he unmarried parent of the adoptee" to adopt. RSA 170-B:4, III (2014).
 

 At the hearing on their motion, the petitioners' attorney explained the petition was brought jointly so as to allow M.F. to retain his parental rights:
 

 If I brought a petition solely in [C.N.'s] name, it would seem that [M.F.] would have to terminate his parental rights for that to get finalized. So I brought a joint petition with [M.F. and C.N.], who are not married but have been in a family unit for over a decade at this point and have two children in common.
 

 ....
 

 So I'm trying to get clarification from the Court.... [I]f the Court says they need to be married, I will have a conversation with my clients about that. If the Court says we could bring it in [C.N.'s] name and we can waive the termination of [M.F.'s] rights, then we can do that.
 

 Ultimately, the trial court dismissed the petition on the ground that RSA chapter 170-B "does not authorize an adoption application from an unmarried adult when a biological parent is not surrendering his parental rights." In effect, the trial court ruled that the outcome that the petitioners sought - that C.N. would adopt J.W., and M.F. would retain his parental rights - was not possible under the current statutory scheme.
 

 The petitioners and our colleagues focus upon the fact that M.F. and C.N. brought the adoption petition jointly. We believe that focus is mistaken. New Hampshire is a notice pleading jurisdiction and, as such, we take a liberal approach to the technical requirements of pleadings.
 
 Porter v. City of Manchester
 
 ,
 
 151 N.H. 30
 
 , 43,
 
 849 A.2d 103
 
 (2004). Although the petition in this case was filed jointly, M.F. cannot "adopt" J.W. because he already has full, parental rights over him. Thus, we believe that the petition, properly viewed, is a petition by C.N. alone. As the petitioners' attorney explained, the petition was brought jointly in an attempt to ensure that M.F.'s parental rights over J.W. remain intact.
 

 Like the State, we believe that this case requires us to answer a question similar to that posed in
 
 In re Y.L.
 

 See
 

 In re Y.L.
 
 ,
 
 171 N.H. 99
 
 , 100,
 
 190 A.3d 1049
 
 (2018). In
 
 In re Y.L.
 
 , we were asked whether, under New Hampshire's adoption statute, the petitioner, an unmarried man, could adopt an adult female without altering the legal parental status of the adult female's birth mother, a result that all three desired.
 

 Id
 

 .
 
 In the instant matter, we are asked whether, C.N., an unmarried woman, may adopt J.W., a minor, without altering the legal parental status of J.W.'s father, M.F. Contrary to the trial court and our colleagues, we believe that she may.
 

 As an unmarried adult, C.N., "is plainly eligible to adopt under our state's adoption statute."
 

 Id
 

 .
 
 ;
 
 see
 
 RSA 170-B:4, II. "Basic, also, is that if the adoption is approved, [J.W.] will be considered the child of [C.N.], entitled to the same rights and privileges and subject to the same duties and obligations as if [he] had been born to [her]."
 
 In re Y.L.
 
 ,
 
 171 N.H. at 100
 
 ,
 
 190 A.3d 1049
 
 ;
 
 see
 
 RSA 170-B:25, I (2014). "And, finally, because the statute contemplates a child having, at most, two legal parents at any given time, it is straightforward that [J.W.] may not maintain [his] legal relationship with
 
 both
 
 of [his] birth parents if adopted by [C.N.]."
 
 In re Y.L.
 
 ,
 
 171 N.H. at 100
 
 ,
 
 190 A.3d 1049
 
 .
 

 Not as clear under our adoption statute, though, is whether J.W. may maintain his
 legal relationship with M.F. after being adopted by C.N.
 
 See
 

 ibr.US_Case_Law.Schema.Case_Body:v1">id
 

 .
 
 That relationship would remain intact were C.N. and M.F. married.
 
 See
 

 ibr.US_Case_Law.Schema.Case_Body:v1">id
 

 .
 
 In that case, C.N. would be J.W.'s stepmother, and when a child is adopted by a stepparent, the child's relationship to the child's birth parent (who is married to the stepparent) "shall in no way be altered by reason of the adoption." RSA 170-B:25, II (2014);
 
 see
 

 also
 
 RSA 170-B:4, IV(a) (2014) (allowing a married person to petition to adopt without joining his or her spouse when the spouse is the parent of the adoptee and assents to the adoption).
 

 Here, similar to the situation in
 
 In re Y.L.
 
 , the statutory scheme does not explicitly tell us whether the relationship between J.W. and M.F. may survive when, as in this case, the adopting parent (here, C.N.) is unmarried.
 
 See
 

 In re Y.L.
 
 ,
 
 171 N.H. at 101
 
 ,
 
 190 A.3d 1049
 
 . We believe that our adoption statutes allow C.N. to adopt as an unmarried woman and M.F. to retain his parental rights. In our view, "it is preferable to take the position of more enlightened courts, that adoption statutes are to be construed liberally, with a view to effectuating the statutory policies" that underlie them.
 
 Smith v. Consul General Of Spain
 
 ,
 
 110 N.H. 62
 
 , 64,
 
 260 A.2d 95
 
 (1969) (quotation omitted);
 
 see
 

 In re Y.L.
 
 ,
 
 171 N.H. at 102
 
 ,
 
 190 A.3d 1049
 
 . Allowing M.F. to retain his parental rights when C.N. adopts J.W. furthers the state policy of protecting an adoptive child, here, J.W., from "unnecessary separation" from the only parent who currently has parental rights over him, M.F. RSA 170-B:1, I (2014).
 

 We agree with the State that the fact that J.W. is a minor does not change the analysis. Although the adoption statute generally "requires the parental rights of a minor's birth parent or parents to have been either surrendered or terminated before an adoption is finalized,"
 
 In re Y.L.
 
 ,
 
 171 N.H. at 101
 
 ,
 
 190 A.3d 1049
 
 , that requirement cannot be interpreted as applying to a stepparent adoption.
 
 See
 
 RSA 170-B:5, I (2014) (enumerating categories of individuals from whom a surrender of parental rights must be obtained "[u]nless excused pursuant to RSA 170-B:7"), :7 (2014) (exempting certain categories of individuals from the requirement to execute a surrender of parental rights). Were it to apply, then RSA 170-B:25, II, which permits the birth parent spouse to retain parental rights in a stepparent adoption, would be rendered a nullity.
 
 See
 

 Garand v. Town of Exeter
 
 ,
 
 159 N.H. 136
 
 , 141,
 
 977 A.2d 540
 
 (2009) ("The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." (quotation omitted));
 
 Wolfgram v. N.H. Dep't of Safety
 
 ,
 
 169 N.H. 32
 
 , 36,
 
 140 A.3d 517
 
 (2016) ("We will not construe a statute in a way that would render it a virtual nullity." (quotation omitted)). Reading RSA 170-B:5, I, :7, and :25 together, as we must, requires us to conclude that a birth parent married to an adopting spouse in a stepparent adoption need not surrender his or her parental rights before an adoption is finalized.
 
 See
 

 Petition of Carrier
 
 ,
 
 165 N.H. 719
 
 , 721,
 
 82 A.3d 917
 
 (2013) ("We construe all parts of a statute together to effectuate its general purpose and avoid an absurd or unjust result.").
 

 Nor should the statutory scheme be interpreted to require such a surrender in the instant case, even though C.N. is not J.W.'s stepparent. RSA 170-B:19, IV (2014) allows the court to authorize the adoption of a minor when the court "determines that the required surrenders have been obtained or excused and that the adoption is in the best interest of the adoptee." In our view, the court has the discretion to authorize C.N.'s adoption of J.W. and excuse the surrender of M.F.'s parental
 rights because doing so would be in J.W.'s best interest.
 

 As the State aptly observes, our conclusion is further supported by
 
 In re Jessica W.
 
 ,
 
 122 N.H. 1052
 
 ,
 
 453 A.2d 1297
 
 (1982). In that case, the court concluded that what is now RSA 170-B:25, II had to be interpreted liberally so as to allow a child to be legitimated by his natural father without losing his relationship with his mother.
 
 In re Jessica W.
 
 ,
 
 122 N.H. at 1056-57
 
 ,
 
 453 A.2d 1297
 
 . The court agreed with the reasoning of another court that a child's "best interests are served by permitting the natural father to adopt in the same manner as if the petitioning father were the stepfather of the adoptive child by marriage to the natural mother."
 
 Id
 
 . at 1056,
 
 453 A.2d 1297
 
 (quotation omitted). Just as a "child should not have to be deprived of its relationship with its mother in order to be legitimized by its natural father through the adoption process," so too should a child not have to be deprived of his relationship with his biological, legal father in order to be adopted by his father's long-term, domestic partner, the mother of the child's half-siblings.
 

 Id
 

 .
 

 Although we do not believe that, properly viewed, the petition in this case is truly a "joint" petition, even if it were, we disagree with the majority that our decision in
 
 In re Jason C.
 
 ,
 
 129 N.H. 762
 
 ,
 
 533 A.2d 32
 
 (1987), would preclude it. In
 
 In re Jason C.
 
 , the issue was whether two, unmarried adults who lived in separate households could jointly petition to adopt a child.
 
 In re Jason C.
 
 ,
 
 129 N.H. at 763-64
 
 ,
 
 533 A.2d 32
 
 . On its face, the statutory language would have allowed the joint petition.
 
 See
 

 id
 
 . at 763,
 
 533 A.2d 32
 
 . One provision allowed "an unmarried adult" to adopt; another stated that singular terms in the adoption statute included "the plural when consistent with the intent of the chapter."
 

 Id
 

 .
 
 (quotations, brackets, and ellipsis omitted);
 
 see
 
 RSA 21:3 (Supp. 2018) (providing that "[w]ords importing the singular number may extend and be applied to several persons or things"). The court ruled that "it was the legislature's intent to confine adoption to applicants who will probably provide a unified and stable household for the child."
 
 In re Jason C.
 
 ,
 
 129 N.H. at 764
 
 ,
 
 533 A.2d 32
 
 . Because the two, unmarried adults in
 
 In re Jason C.
 
 maintained separate households, requiring custody and perhaps visitation issues to be addressed if the joint adoption petition were allowed, the court ruled that allowing the petition was inconsistent with the statute's purpose, and declined to interpret the statute as authorizing the joint petition.
 
 Id
 
 . at 764-65,
 
 533 A.2d 32
 
 .
 

 Although the court in
 
 In re Jason C.
 
 used language implying that two, unmarried adults could not jointly adopt under
 
 any
 
 circumstances, that language is dicta and, more importantly, is based upon a rationale that is no longer true. The court in
 
 In re Jason C.
 
 reasoned that two unmarried applicants could not be allowed to adopt jointly because, if they could, the trial court would lack jurisdiction to decide custody issues.
 

 Id
 

 .
 
 The court observed that RSA chapter 170-B made no provision for custody determinations in such a case and that " RSA 458:17 ... simply empowers the superior court to make custody orders in divorce and annulment cases."
 
 Id
 
 . at 765,
 
 533 A.2d 32
 
 .
 

 Since
 
 In re Jason C.
 
 was decided, however, RSA 458:17 was repealed and RSA 461-A:3 now provides that the court has jurisdiction to decide parental rights and responsibilities when "unwed parents are living apart." RSA 461-A:3, II (2018);
 
 see
 
 Laws 2005, 273:1, :20 (enacting RSA chapter 461-A and repealing RSA 458:17, among other provisions in RSA chapter 458). Thus, while it may well be that when
 
 In re Jason C.
 
 was decided, we could
 properly say that the legislature did not intend "to authorize adoption in circumstances in which custody disputes would be likely to arise, or indeed could arise, independently of the superior court's domestic relations jurisdiction under RSA chapter 458," that rationale no longer applies.
 
 In re Jason C.
 
 ,
 
 129 N.H. at 765
 
 ,
 
 533 A.2d 32
 
 .
 

 Given that an important rationale underlying the holding of
 
 In re Jason C.
 
 is no longer true, we would limit
 
 In re Jason C.
 
 to its facts. In other words, we would interpret
 
 In re Jason C.
 
 narrowly to preclude two, unmarried adults from jointly adopting a child only when to do so would contravene legislative intent that applicants provide a unified and stable household for the child.
 
 See
 

 id
 
 . at 764,
 
 533 A.2d 32
 
 . Under our reading of
 
 In re Jason C.
 
 , if neither C.N. nor M.F. were J.W.'s parent, and they sought to jointly adopt, we believe that they could do so because their adoption of J.W. would further that legislative intent. The statute specifically allows unmarried adults to adopt.
 
 See
 
 RSA 170-B:4, II. The general rules of statutory construction provide that the singular may include the plural.
 
 See
 
 RSA 21:3. And, allowing such an adoption would be consistent with the legislature's purpose of confining adoption to applicants who will provide a unified and stable household for the child.
 
 See
 

 In re Jason C.
 
 ,
 
 129 N.H. at 765
 
 ,
 
 533 A.2d 32
 
 .
 

 For all of the above reasons, therefore, we respectfully dissent from the majority opinion.